## CYNTHIA A. VIOLANO ET AL. *v.* HENRY J. FERNANDEZ III ET AL.
### (AC 24918)

Schaller, Bishop and Hennessy, Js.

Argued October 28, 2004—officially released March 15, 2005

*William F. Gallagher*, with whom, on the brief, was *Hugh D. Hughes*, for the appellants (plaintiffs).

*James S. Del Visco*, assistant corporation counsel, for the appellees (defendants).

*Opinion*

SCHALLER, J. The plaintiffs, Cynthia A. Violano and Cinderella of New Haven, LLC, doing business as Seasons (Cinderella), appeal from the judgment of the trial court rendered in favor of the defendants, Henry J. Fernandez III and the city of New Haven (city). On appeal, the plaintiffs claim that the court improperly struck their fourth revised complaint in its entirety.[1] We affirm the judgment of the trial court.

In their operative complaint, filed on May 10, 2002, the plaintiffs alleged the following facts, which are relevant to our discussion of the issue on appeal. On June 16, 1999, the plaintiffs entered into a ten year lease for property located at 26-28 Townsend Avenue (property) in New Haven.[2] The plaintiffs also signed a purchase option agreement that gave Cinderella the exclusive right to purchase the property. Both the lease agreement and the purchase option were recorded on the appropriate land records.

The plaintiffs intended to operate a restaurant on the property, which was located next to a firehouse. The plaintiffs obtained the necessary zoning permits and health department certificates for the restaurant. They also acquired a liquor permit from the department of consumer protection.

---

[1] The plaintiffs' fourth revised complaint, the operative pleading, contained six counts. At oral argument, the plaintiffs represented that they had withdrawn any claims with respect to the court's striking of the fifth count, which alleged that the city violated the plaintiffs' civil rights in violation of 42 U.S.C. §§ 1983 and 1988, and the sixth count, which alleged a claim of intentional infliction of emotional distress against Fernandez. Those counts, therefore, are not part of this appeal.

[2] Demitra E. Alfano and Joseph F. Alfano, Jr., were the record owners of the property, which they leased to the plaintiffs.

On December 13, 1999, Fernandez, the director of the Livable City Initiative (Livable City),[3] recommended that the city take the property by eminent domain and Livable City's board voted in accordance with his recommendation. On January 3, 2000, the city's board of aldermen (board) approved the taking for the purpose of expanding the firehouse. The city filed and recorded the certificate of taking in April, 2000.[4] Subsequent to the taking, on November 3, 2000, a robbery occurred at the property, and all of the plaintiffs' items, renovations and fixtures were stolen or destroyed.

On June 18, 2001, the plaintiffs commenced the present action. On May 22, 2002, the defendants filed a motion to strike the entire complaint, alleging that it was insufficient to state a claim on which relief could be granted. Following a hearing on the defendants' motion, the court, on October 17, 2003, granted the defendants' motion. The defendants subsequently filed a motion for judgment, which the court granted on November 17, 2003. This appeal followed. Additional facts will be set forth as necessary.

As a preliminary matter, we identify the appropriate standard of review. "Because a motion to strike challenges the legal sufficiency of a pleading and, consequently, requires no factual findings by the trial court, our review of the court's ruling on the [defendants' motion] is plenary. . . . We take the facts to be those alleged in the complaint that has been stricken and we construe the complaint in the manner most favorable to sustaining its legal sufficiency. . . . Thus, [i]f facts provable in the complaint would support a cause of action, the motion to strike must be denied. . . . More-

_____

[3] According to paragraph one of the first count of the complaint, Livable City was "charged on behalf of the city with the care, maintenance, operation and redevelopment of the various neighborhoods within the city limits of the city of New Haven."

[4] See General Statutes § 8-129.

over, we note that [w]hat is necessarily implied [in an allegation] need not be expressly alleged. . . . It is fundamental that in determining the sufficiency of a complaint challenged by a defendant's motion to strike, all well-pleaded facts and those facts necessarily implied from the allegations are taken as admitted. . . . Indeed, pleadings must be construed broadly and realistically, rather than narrowly and technically." (Citations omitted; internal quotation marks omitted.) *Commissioner of Labor* v. *C.J.M. Services, Inc.*, 268 Conn. 283, 292–93, 842 A.2d 1124 (2004); see also *Heim* v. *California Federal Bank*, 78 Conn. App. 351, 358–59, 828 A.2d 129, cert. denied, 266 Conn. 911, 832 A.2d 70 (2003). We will address each of the stricken counts in turn.

I

The plaintiffs first claim that the court improperly struck count one of their complaint. In that count, the plaintiffs alleged that Fernandez negligently caused the property to be taken, and that, as a result of his negligence, they lost a valuable contract right to manage and own a restaurant located on the property, as well as expenses for obtaining permits and supplies. Specifically, the plaintiffs claimed that Fernandez was negligent by causing, allowing or permitting (1) the taking of their option to purchase without compensation, (2) the city to acquire the property without determining if it was for a public purpose, (3) the city to acquire the property in bad faith, (4) the taking by the city without determining its actual purpose and (5) the taking after failing to make a reasonable and proper determination of the city's true intention for the property.

In their motion to strike, the defendants argued, inter alia, that Fernandez could not be held liable for the taking because any such taking was a "legislative function that was carried out by [the board]." The trial court agreed with this argument. We are similarly persuaded.

"Eminent domain refers to a legal proceeding in which a government asserts its authority to condemn property." (Internal quotation marks omitted.) *Citino* v. *Redevelopment Agency*, 51 Conn. App. 262, 279, 721 A.2d 1197 (1998). General Statutes § 7-148 (c) (3) (A) provides in relevant part that a municipality, such as the city, has the power to "[*t*]*ake* . . . hold, condemn, lease, sell, manage, transfer, release and convey such *real and personal property or interest therein absolutely* or in trust as the purposes of the municipality or *any public use or purpose, including that of* . . . *health* . . . *buildings or other structures* . . . require. . . ." (Emphasis added.) Additionally, General Statutes § 48-6 (a) provides in relevant part that "[a]ny municipal corporation having the right to purchase real property for its municipal purposes which has, in accordance with its charter or the general statutes, voted to purchase the same shall have power to take or acquire such real property . . . ." The New Haven charter vests the power of eminent domain with the board.[5] Thus, although a broad reading of the allegation in the first count of the plaintiffs' complaint indicates that Fernan-

[5] Article IX, § 48, of the New Haven charter, entitled "Power of eminent domain," provides: "Said board of alderman may take by the right of eminent domain, in the name of the city, any property or property rights which may be needed for the purpose of laying out, extending or widening any street or park, or for the purpose of constructing or protecting any sewer, drain or other property, or for the purpose of any public building, or for the successful prosecution and management of the almshouse and the property connected therewith, upon payment of just compensation under the rules governing the right of eminent domain, provided said board of alderman shall acquire no land under the provisions of this section within the Town of West Haven except land included within an area outlined in red on a map known as 'Map of West River Park' and dated April 2, 1925, on file in the office of the town clerk in West Haven, and provided no land shall be acquired by said board in the manner above specified in any town except by agreement with the officials of that town in which such land shall be located."

Additionally, article IX, § 49 (e), provides that the board is responsible to provide just compensation to the owners of property taken by the city for public use.

dez was the director of Livable City, which made an improper recommendation in favor of taking the property, ultimately it was *the board that actually took the property* pursuant to the procedures found in the General Statutes and the city's charter. Thus, responsibility for the taking lies with the board, and not Fernandez.

We conclude that the allegations in count one of the complaint indicate that Fernandez was responsible for the taking of the property. We agree with the court that it was, in fact, the board that took the property. The plaintiffs, therefore, failed to state a claim on which relief could be granted, and the court properly struck count one of the complaint.

II

The plaintiffs next claim that the court improperly struck count two of their complaint. Specifically, they argue that, as of April 12, 2000, the city was the owner of the premises and that Fernandez, as director of Livable City, was the controller, possessor and manager of the premises and that, due to the defendants' negligence in failing to provide adequate security, the plaintiffs sustained damages. We agree with the plaintiffs that the court improperly concluded that they failed to plead that Fernandez controlled, possessed, managed or maintained the property after the taking.[6] Nevertheless,

---

[6] In paragraph twenty-two of the second count, the plaintiffs alleged that "[a]s of April 12, 2000 [subsequent to the taking], said premises and furnishings thereon were controlled, possessed, managed and/or maintained by . . . Henry J. Fernandez III as director of the Livable City Initiative for the city of New Haven." On the basis of this allegation, we disagree with the court's statement that the plaintiffs failed to state a cause of action against Fernandez. Furthermore, we are not aware of any prohibition against the city, which had legal title to the property, from delegating or assigning the responsibility for security to a third party such as Fernandez. Put another way, we do not believe that, as a matter of law, the city was prohibited from delegating control, management or maintenance of the property to Fernandez.

we affirm the court's judgment as to count two on alternate grounds.[7]

The defendants argue, in the alternative, that Fernandez, who was alleged to be an employee of the city, is entitled to qualified governmental immunity because any acts or omissions with respect to security related to the property were discretionary in nature.[8] The defendants further argue that the allegations set forth in the complaint do not implicate any of the exceptions applicable to qualified governmental immunity for discretionary acts. We agree.

"The [common-law] doctrines that determine the tort liability of municipal employees are well established. . . . Although historically [a] municipality itself was generally immune from liability for its tortious acts at common law . . . [municipal] employees faced the same personal tort liability as private individuals. . . .

[7] "It is axiomatic that [w]e may affirm a proper result of the trial court for a different reason." (Internal quotation marks omitted.) *Sorban* v. *Sterling Engineering Corp.*, 79 Conn. App. 444, 456, 830 A.2d 372, cert. denied, 266 Conn. 925, 835 A.2d 473 (2003); see also *Golab* v. *New Britain*, 205 Conn. 17, 27, 529 A.2d 1297 (1987) (appellate courts authorized to rely on alternate grounds supported by record to sustain judgment); *State* v. *John G.*, 80 Conn. App. 714, 726, 837 A.2d 829 (2004) (same).

[8] The defendants set forth the claim of qualified governmental immunity in their motion to strike. The court did not consider this argument in light of its conclusion with respect to count two. "We are mindful of our Supreme Court's statement that governmental immunity must be raised as a special defense . . . . Governmental immunity is essentially a defense of confession and avoidance similar to other defenses required to be affirmatively pleaded [under Practice Book § 10-50]. . . . Thus, a motion to strike ordinarily is an improper method for raising a claim of governmental immunity. We have recognized, however, that where it is apparent from the face of the complaint that the municipality was engaging in a governmental function while performing the acts and omissions complained of by the plaintiff, the defendant is not required to plead governmental immunity as a special defense and may attack the legal sufficiency of the complaint through a motion to strike. *Brown* v. *Branford*, 12 Conn. App. 106, 111 n.3, 529 A.2d 743 (1987) . . . ." (Citations omitted; internal quotation marks omitted.) *Doe* v. *Board of Education*, 76 Conn. App. 296, 299 n.6, 819 A.2d 289 (2003).

Over the years, however, [t]he doctrine of [qualified] immunity has provided some exceptions to the general rule of tort liability for municipal employees. . . . Generally, a municipal employee is liable for the misperformance of ministerial acts, but has a qualified immunity in the performance of governmental acts. . . . Governmental acts are performed wholly for the direct benefit of the public and are supervisory or discretionary in nature. . . . In contrast, [m]inisterial refers to a duty [that] is to be performed in a prescribed manner without the exercise of judgment or discretion." (Internal quotation marks omitted.) *Myers* v. *Hartford*, 84 Conn. App. 395, 401–402, 853 A.2d 621, cert. denied, 271 Conn. 927, 859 A.2d 582 (2004); see also *Burns* v. *Board of Education*, 228 Conn. 640, 645, 638 A.2d 1 (1994). Put another way, "[t]*he hallmark of a discretionary act is that it requires the exercise of judgment.*" (Emphasis added.) *Lombard* v. *Edward J. Peters, Jr., P.C.*, 252 Conn. 623, 628, 749 A.2d 630 (2000).

In the present case, the plaintiffs alleged in count two of their complaint that Fernandez negligently failed to install a security system or device to protect the property, failed to install adequate locks, failed to monitor adequately who possessed keys to the property, failed to supervise adequately the security of the property, failed to respond to reports of theft or loss at the property so as to prevent future losses, caused or allowed the property to be maintained with defective or inadequate security and failed to make reasonable and proper inspections of the property. There is no mention in the complaint of a policy or directive instructing Fernandez in the manner in which he was obligated to ensure the security of the property. See *Segreto* v. *Bristol*, 71 Conn. App. 844, 857, 804 A.2d 928, cert. denied, 261 Conn. 941, 808 A.2d 1132 (2002); *Colon* v. *Board of Education*, 60 Conn. App. 178, 181–83, 758 A.2d 900, cert. denied, 255 Conn. 908, 763 A.2d 1034

(2000). Moreover, the allegations in count two that Fernandez failed to install "adequate" locks, failed to monitor "adequately" who received keys to the building, failed to supervise "adequately" the security of the property and failed to make "reasonable and proper" inspections of the property all implicate the exercise of judgment, and thus are discretionary acts. See *Evon* v. *Andrews*, 211 Conn. 501, 506–507, 559 A.2d 1131 (1989). Even the determination of whether a security system was needed required the use of judgment on the part of Fernandez. See id., 506. We conclude, therefore, that on the face of the allegations in count two of the complaint, Fernandez was entitled to qualified governmental immunity and that such a defense, under these facts and circumstances, properly was raised by way of a motion to strike.[9]

We now consider the three exceptions to qualified governmental immunity for discretionary acts of municipal employees in order to determine if any are applicable to the present case. "The immunity from liability for the performance of discretionary acts by a municipal employee is subject to three exceptions or circumstances under which liability may attach even though the act was discretionary: first, where the circumstances make it apparent to the public officer that his or her failure to act would be likely to subject an identifiable person to imminent harm . . . second, where a statute specifically provides for a cause of action against a municipality or municipal official for failure to enforce certain laws . . . and third, where the alleged acts involve malice, wantonness or intent to injure, rather than negligence." (Internal quotation

---

[9] "[A]lthough the general rule is that a determination as to whether the actions or omissions of a municipality are discretionary or ministerial is a question of fact for the jury, "there are cases where it is apparent from the complaint." (Internal quotation marks omitted.) *Segreto* v. *Bristol*, supra, 71 Conn. App. 855.

marks omitted.) *Colon* v. *Board of Education*, supra, 60 Conn. App. 180–81. The only exception to the qualified immunity of a municipal employee for discretionary acts that is relevant to the present case is the exception permitting a tort action in circumstances of imminent harm to an identifiable person, which has received very limited recognition in this state. See *Doe* v. *Board of Education*, 76 Conn. App. 296, 302, 819 A.2d 289 (2003).

Our Supreme Court's opinion in *Evon* v. *Andrews*, supra, 211 Conn. 501, provides us with guidance in resolving this issue.[10] In that case, the plaintiffs alleged in the fifth count of their complaint that the defendants, the city of Waterbury and various city officials, negligently failed to enforce certain statutes, regulations and codes regarding rental dwellings and fire prevention. Id., 502. The trial court granted the defendants' motion to strike that count on the basis that the count focused on a governmental duty. Id., 504. On appeal, the plaintiffs claimed, inter alia, that the identifiable person-imminent harm exception applied. Our Supreme Court rejected that argument. In doing so, it concluded that the risk of fire implicated a wide range of factors and that the possibility of a fire did not implicate an immediate harm. Id., 508.

[10] The dissent argues that the plaintiffs have alleged a private duty, which permits an action against the municipal employee. We note that in *Gordon* v. *Bridgeport Housing Authority*, 208 Conn. 161, 169, 544 A.2d 1185 (1988), our Supreme Court stated: "*Whether a public or private duty is established, there is no potential liability if the act complained of is a discretionary act that does not fit into any of the narrow exceptions outlined in Shore* [v. *Stonington*, 187 Conn. 147, 153, 444 A.2d 1379 (1982)]. The finding of a public duty is often, but not always, dispositive of whether the act is a discretionary one." (Emphasis added.) Similarly, in *Redfearn* v. *Ennis*, 28 Conn. App. 398, 401, 610 A.2d 1338 (1992), we relied on *Gordon* and declined to engage in a private versus public duty analysis. Instead, we concluded that the defendant had performed a governmental or discretionary act, and that the doctrine of governmental immunity barred the plaintiff's action. We are persuaded that in this case, where Fernandez' actions were indisputably discretionary, we need not engage in a private versus public analysis, as the determination of the discretionary versus ministerial issue is dispositive.

In the present case, the risk of a robbery at the property also implicates a variety of factors, such as the location of the building, the surrounding area, the security measures taken and the type of materials stored within the building. Furthermore, because the robbery did not occur until months after the city obtained legal title to the building, it cannot be said that an "immediate harm" was implicated. See *Shore* v. *Stonington*, 187 Conn. 147, 153–54, 444 A.2d 1379 (1982). In short, we conclude that, because the acts and omissions alleged in count two of the plaintiffs' complaint were discretionary in nature, Fernandez was entitled to qualified governmental immunity. None of the exceptions to qualified governmental immunity apply to the facts alleged. Accordingly, the court properly struck count two of the complaint.[11]

### III

The plaintiffs' final claim is that the court improperly struck count four of their operative complaint. Specifically, they argue that count four incorporated the allegations contained in count two (negligent security against Fernandez) and further alleged that the city, as the employer of Fernandez and others, was responsible for those actions pursuant to General Statutes § 52-557n.[12]

[11] Count three alleged that, pursuant to General Statutes § 7-465, the city was required to indemnify Fernandez for his negligent acts or omissions as alleged in count two. At oral argument, the parties agreed that the viability of count three is solely dependent on the viability of count two. Because we conclude that the court properly struck count two, we also conclude that count three, an indemnification claim, properly was struck by the court.

[12] General Statutes § 52-557n (a) provides in relevant part: "(1) Except as otherwise provided by law, a political subdivision of the state shall be liable for damages to person or property caused by: (A) The negligent acts or omissions of such political subdivision or any employee, officer or agent thereof acting within the scope of his employment or official duties . . . . (2) Except as otherwise provided by law, a political subdivision of the state shall not be liable for damages to person or property caused by: (A) Acts or omissions of any employee, officer or agent which constitute criminal conduct, fraud, actual malice or wilful misconduct; or (B) negligent acts or omissions which require the exercise of judgment or discretion as an official function of the authority expressly or impliedly granted by law."

We affirm the judgment as to this count, but on grounds different from those set forth by the court.[13]

In its memorandum of decision, the court properly concluded that § 52-557n (a) (1) and our Supreme Court's holding in *Spears* v. *Garcia*, 263 Conn. 22, 818 A.2d 37 (2003), permitted a direct action against the city.[14] It then, however, turned to § 52-557n (b), which provides that "[n]otwithstanding the provisions of subsection (a) of this section, a political subdivision of the state or any employee, officer or agent acting within the scope of his employment or official duties shall not be liable for damages to person or property resulting from . . . (5) the initiation of a judicial or administrative proceeding, provided that such action is not determined to have been commenced or prosecuted without probable cause or with a malicious intent to vex or trouble, as provided in section 52-568 . . . ." The court determined that this subsection of § 52-557n afforded the city immunity because the eminent domain proceeding fell within its scope.

We disagree with the court's interpretation of the pleading.[15] In our view, count four of the complaint raised allegations of negligence that occurred *after* the

---

[13] See footnote 7.

[14] In *Spears*, our Supreme Court held that the language contained in General Statutes § 52-557n (a) (1) "clearly and expressly abrogates the traditional common-law doctrine in this state that municipalities are immune from suit for torts committed by their employees or agents. . . . Therefore, the legislature has manifested its intention to abrogate governmental immunity under the statute." (Citations omitted.) *Spears* v. *Garcia*, supra, 263 Conn. 29.

[15] We note that "[t]he interpretation of pleadings is always a question of law for the court . . . . The modern trend, which is followed in Connecticut, is to construe pleadings broadly and realistically, rather than narrowly and technically. . . . Although essential allegations may not be supplied by conjecture or remote implication . . . the complaint must be read in its entirety in such a way as to give effect to the pleading with reference to the general theory upon which it proceeded, and do substantial justice between the parties." (Internal quotation marks omitted.) *Benedetto* v. *Wanat*, 79 Conn. App. 139, 148, 829 A.2d 901 (2003).

eminent domain proceeding, namely, that city employees, including Fernandez, failed to take the appropriate steps to ensure the security of the property after the city took legal title to the property. Thus, it appears that § 52-557n (b) (5) does not apply to the allegations contained in count four.

The defendants argue, as an alternate ground for affirming the judgment, that the city was entitled to judgment pursuant to § 52-577n (a) (2) (B), which provides that "[e]xcept as otherwise provided by law, a political subdivision of the state shall not be liable for damages to person or property caused by . . . negligent acts or omissions which require the exercise of judgment or discretion as an official function of the authority expressly or impliedly granted by law." See also *Romano* v. *Derby*, 42 Conn. App. 624, 629, 681 A.2d 387 (1996). In part II of this opinion, we concluded that any of the alleged negligent acts or omissions regarding the security of the property involved the exercise of judgment or discretion. Accordingly, by operation of § 52-577n (a) (2) (B), the city cannot be held liable for the actions of its employees pertaining to the security of the property.

The judgment is affirmed.

In this opinion HENNESSY, J., concurred.

BISHOP, J., dissenting in part. While I agree with my colleagues that the first count of the complaint was properly stricken, I believe the court incorrectly struck counts two, three and four. As noted by the majority, the second count of the complaint sets forth a claim against Henry J. Fernandez III, a municipal employee, for negligence. In sum, the plaintiffs allege in count two that the city of New Haven (city) had taken a certain building by eminent domain, that Fernandez, as an agent of the municipality, was in control and possession of

the building and its contents, and that the plaintiffs were the owners of the building's contents. The plaintiffs further alleged that the contents of the building had been stolen and that their loss was due to the negligent failure of Fernandez to secure adequately the building and its contents. The third count alleged that the city should be liable for indemnification based on the allegations against Fernandez. The fourth claim sets forth a direct claim against the municipality.

In agreeing with the trial court, the majority holds as a matter of law that Fernandez, as a municipal officer, is entitled to governmental immunity for the failure to perform a discretionary act. Specifically, the majority holds that the exception for discretionary acts relating to the imminent harm to an identifiable victim did not apply to the circumstances as alleged by the plaintiffs. In reaching this conclusion, my colleagues find support in *Evon* v. *Andrews*, 211 Conn. 501, 559 A.2d 1131 (1989). I do not believe *Evon* is controlling. In *Evon*, our Supreme Court determined that the trial court correctly had struck the fifth count of the plaintiffs' complaint directed against a municipality and various municipal officers for the wrongful death of the plaintiffs' decedents who had perished in a multifamily apartment fire. Id., 502. In arriving at its conclusion, the Supreme Court did not evaluate whether the duty involved was public or private because the parties had agreed that the duty was public. Id., 506. The court determined that the victims were not a discrete, readily identifiable group and that the risk of harm to them was not imminent. Id., 508. The court noted: "The class of possible victims of an unspecified fire that may occur at some unspecified time in the future is by no means a group of 'identifiable persons' . . . ." Id. Additionally, the *Evon* court found that the facts alleged in the complaint could not support

a finding that the risk of harm was imminent because a fire could happen at any time in the future. Id.

Contrary to *Evon*, the duty alleged by the plaintiffs in the instant case may fairly be characterized as private, and not public, because the duty related to specific property belonging only to the plaintiffs. "[I]f the duty which the official authority imposes upon an officer is a duty to the public, a failure to perform it, or an inadequate or erroneous performance, must be a public, not an individual injury, and must be redressed, if at all, in some form of public prosecution. On the other hand, if the duty is a duty to the individual, then a neglect to perform it, or to perform it properly, is an individual wrong, and may support an individual action for damages. 2 Cooley, Torts (4th Ed.) p. 385." (Internal quotation marks omitted.) *Leger* v. *Kelley*, 142 Conn. 585, 589–90, 116 A.2d 429 (1955). The notion that the breach of a private duty may expose a municipal employee to liability was later reaffirmed in *Shore* v. *Stonington*, 187 Conn. 147, 152, 444 A.2d. 1379 (1982), and *Gordon* v. *Bridgeport Housing Authority*, 208 Conn. 161, 166, 544 A.2d 1185 (1988).

While the decisional law regarding a municipal employee's liability for the negligent performance of a private act is not abundantly clear, I am not prepared to conclude that the private duty doctrine is dead in Connecticut. Rather, we have a dearth of cases assessing the imposition of liability on the basis of a private duty because in cases in which a private duty has been alleged, the courts have found the nature of the duty to be public. See, e.g., *Shore* v. *Stonington*, supra, 187 Conn. 152–57; *Roman* v. *Stamford*, 16 Conn. App. 213, 216, 220–21, 547 A.2d 97 (1988), aff'd, 211 Conn. 396, 559 A.2d 710 (1989). This case, I believe, squarely implicates a private and not a public duty because the municipality and its employees had a duty

not to the public, but to the plaintiffs alone for the security of their personal property.

I am familiar, too, with the dicta of *Shore* v. *Stonington*, supra, 187 Conn. 156, that even if a duty is private, a municipality and its employees will not be liable for the negligent performance of a discretionary act unless the plaintiffs can prove that they were within an identifiable group for whom the risk of harm was imminent. In addition to my awareness that dicta does not constitute precedent, I believe the facts alleged in counts two and four are sufficient for a fact finder to determine that Fernandez had a duty to an identifiable group of victims, i.e., the plaintiffs, to prevent loss to their personalty. As to the imminence of the harm, I believe that raises a question of fact ill suited for a motion to strike. Because a motion to strike a complaint on the basis of governmental immunity should only be granted if it is plain that the complaint is not legally viable, I would have denied the motion to strike as to count two, which was based on the allegations against Fernandez, as to count three, which was based on the city's indemnification of Fernandez, and as to count four, which consisted of allegations against the municipality, leaving the parties to further flesh out any factual issues by way of more appropriate, less cursory pleadings.

Accordingly, I respectfully dissent.