TONISHA SPEARS ET AL. *v.* BENIGA GARCIA ET AL.
(SC 16676)

Sullivan, C. J., and Norcott, Katz, Palmer and Zarella, Js.

Argued December 4, 2002—officially released April 1, 2003

*Arthur C. Laske III*, assistant city attorney, for the appellants (defendant city of Bridgeport et al.).

*Karen E. Souza*, for the appellees (plaintiffs).

*Mary-Michelle U. Hirschoff* filed a brief for the Connecticut Conference of Municipalities as amicus curiae.

*Kathryn Calibey* and *Douglas W. Hammond* filed a brief for the Connecticut Trial Lawyers Association as amicus curiae.

*Opinion*

KATZ, J. The defendants,[1] the city of Bridgeport and the Bridgeport fire department, appeal, upon our grant of certification, from the judgment of the Appellate Court reversing the summary judgment in favor of the defendants rendered by the trial court based upon the failure of the plaintiffs, Tonisha Spears and Medina Spears,[2] to cite in their complaint General Statutes § 52-557n[3] as statutory authority abrogating the defendants'

---

[1] In the original complaint, Beniga Garcia, the driver of the vehicle that struck the plaintiff Tonisha Spears, was also named as a defendant. The plaintiffs later withdrew their claims against Garcia, and he is not a party to this appeal. References herein to the defendants are to the city of Bridgeport and the Bridgeport fire department only.

[2] Medina Spears brought this action on behalf of her daughter, Tonisha Spears, who is a minor.

[3] General Statutes § 52-557n (a) provides: "(1) Except as otherwise provided by law, a political subdivision of the state shall be liable for damages to person or property caused by: (A) The negligent acts or omissions of such political subdivision or any employee, officer or agent thereof acting within the scope of his employment or official duties; (B) negligence in the performance of functions from which the political subdivision derives a special corporate profit or pecuniary benefit; and (C) acts of the political subdivision which constitute the creation or participation in the creation of a nuisance; provided, no cause of action shall be maintained for damages resulting from injury to any person or property by means of a defective road or bridge except pursuant to section 13a-149. (2) Except as otherwise provided by law, a political subdivision of the state shall not be liable for damages to person or property caused by: (A) Acts or omissions of any employee, officer or agent which constitute criminal conduct, fraud, actual

governmental immunity. *Spears* v. *Garcia*, 66 Conn. App. 669, 785 A.2d 1181 (2001). The defendants claim that, even if the Appellate Court properly determined that they otherwise had been given adequate notice of the plaintiffs' reliance on § 52-557n, that statute does not abrogate governmental immunity. We agree with the Appellate Court that § 52-557n allows the plaintiffs to bring a direct cause of action for negligence against the defendants and, accordingly, we affirm the judgment.

The Appellate Court opinion sets forth the following relevant facts and procedural history. "The plaintiffs brought this action against the defendants for injuries that Tonisha Spears sustained on June 28, 1994. On that date, a motor vehicle struck her after she was pushed into the road by a high pressure stream of water flowing from a fire hydrant, which had been opened by an unauthorized person. The hydrant did not have a safety device or a cap to prevent unauthorized openings as of the date of the incident.

"In their complaint, the plaintiffs alleged that the defendants were negligent for failing to install safety devices on the hydrant and for failing to inspect it. The plaintiffs' complaint, however, did not mention any statutory authority that abrogated the defendants' governmental immunity. The defendants, in their answer, pleaded that immunity as a special defense.

"On December 16, 1998, the defendants filed a motion for summary judgment, claiming that the plaintiffs' action was barred by the doctrine of governmental immunity because they failed to cite any statute in their complaint that abrogated the immunity. To advance that position, the defendants cited *Williams* v. *New*

malice or wilful misconduct; or (B) negligent acts or omissions which require the exercise of judgment or discretion as an official function of the authority expressly or impliedly granted by law."

*Haven,* [243 Conn. 763, 707 A.2d 1251 (1998)], in their memorandum of law supporting the motion for summary judgment. The plaintiffs, in response, filed a memorandum in opposition to the motion for summary judgment. In the memorandum, the plaintiffs mentioned for the first time § 52-557n as abrogating the defendants' immunity. The plaintiffs also distinguished *Williams,* noting that the plaintiffs in that case never relied on § 52-557n throughout the proceedings. See id., 766. In contrast, the plaintiffs [in the Appellate Court] emphasize[d] that although they did not specifically plead the statute in the complaint, the defendants were sufficiently apprised of the statute in the plaintiffs' memorandum.

"During oral arguments on the motion for summary judgment, the parties reiterated their positions. The defendants also claimed at oral argument [on their motion] that pursuant to Practice Book § 10-3 (a), '[w]hen any claim made in a complaint . . . is grounded on a statute, the statute shall be specifically identified by its number.' The [trial] court, in response, noted that the language of that section has been interpreted to be directory rather than mandatory. In addition, the court found the facts of the present case to be remarkably similar to those of *Williams* and [found] that in both *Williams* and the present case, the plaintiffs relied solely on their claim of common-law negligence and, at no time, advanced any statutory basis for the defendants' liability.

"The [trial] court granted the defendants' motion, holding that although Practice Book § 10-3 (a) has been read as directory rather than mandatory, *Williams* is controlling on the present case." *Spears* v. *Garcia,* supra, 66 Conn. App. 671–73. Thereafter, the Appellate Court reversed the trial court's judgment, concluding that the plaintiffs' failure to plead § 52-557n in their complaint was not fatal under the circumstances of this

case. Id., 676. Specifically, the Appellate Court determined that the trial court improperly had relied on *Williams* v. *New Haven,* supra, 243 Conn. 763, because, unlike the plaintiff in *Williams,* the plaintiffs in the present case had apprised the defendants sufficiently of their reliance on § 52-557n by raising the statute in their memorandum of law in opposition to the motion for summary judgment and in oral argument before the trial court.[4] *Spears* v. *Garcia,* supra, 676.

As an alternate ground for affirmance, the defendants contended that the plaintiffs' reliance on § 52-557n as a basis for abrogating the defendants' immunity was improper. Id., 677. The Appellate Court disagreed, determining that § 52-557n abrogates governmental immunity, thus allowing a direct cause of action for negligence against the defendants. Id., 680. Thereafter, we granted the defendants' petition for certification, limited to the following question: "Does . . . § 52-557n permit a plaintiff to bring a direct cause of action in negligence against a municipality?" *Spears* v. *Garcia,* 259 Conn. 915, 792 A.2d 852 (2002).

The certified question on appeal raises an issue of statutory construction and, therefore, our review is plenary. *State* v. *Russo,* 259 Conn. 436, 447, 790 A.2d 1132, cert. denied, 537 U.S. 879, 123 S. Ct. 79, 154 L. Ed. 2d 134 (2002). "The process of statutory interpretation involves a reasoned search for the intention of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of this case, including the question of whether the language actually does apply. In seeking to determine that meaning, we look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to

---

[4] The propriety of that determination is not part of this certified appeal.

its relationship to existing legislation and common law principles governing the same general subject matter." (Citation omitted; internal quotation marks omitted.) *Schiano* v. *Bliss Exterminating Co.*, 260 Conn. 21, 34, 792 A.2d 835 (2002).

Of particular relevance in this case is the related principle that "[w]hen a statute is in derogation of common law or creates a liability where formerly none existed, it should receive a strict construction and is not to be extended, modified, repealed or enlarged in its scope by the mechanics of [statutory] construction. . . . In determining whether or not a statute abrogates or modifies a common law rule the construction must be strict, and the operation of a statute in derogation of the common law is to be limited to matters clearly brought within its scope." (Citation omitted; internal quotation marks omitted.) *Vitanza* v. *Upjohn Co.*, 257 Conn. 365, 381, 778 A.2d 829 (2001).

"This court has previously stated that [a] municipality itself was generally immune from liability for its tortious acts at common law . . . . We have also long recognized that, [u]nder our rule, the principle of governmental immunity extends to the construction and maintenance of fire equipment as well as to its use for fire protection. . . . We have also recognized, however, that governmental immunity may be abrogated by statute. . . . Thus, the general rule developed in our case law is that a municipality is immune from liability for negligence unless the legislature has enacted a statute abrogating that immunity." (Citations omitted; internal quotation marks omitted.) *Williams* v. *New Haven*, supra, 243 Conn. 766–67.

Against this background, we turn to the certified question: whether § 52-557n permits a plaintiff to bring a direct cause of action in negligence against a municipality. "As with all issues of statutory interpretation,

we look first to the language of the statute." (Internal quotation marks omitted.) *Gipson* v. *Commissioner of Correction*, 257 Conn. 632, 639, 778 A.2d 121 (2001). The language of § 52-557n (a) (1) provides in relevant part: "Except as otherwise provided by law, a political subdivision of the state shall be liable for damages to person or property caused by: (A) The negligent acts or omissions of such political subdivision or any employee, officer or agent thereof acting within the scope of his employment or official duties . . . ."

This language clearly and expressly abrogates the traditional common-law doctrine in this state that municipalities are immune from suit for torts committed by their employees and agents. Cf. *Babes* v. *Bennett*, 247 Conn. 256, 263–64, 721 A.2d 511 (1998) (noting General Statutes § 52-556 is statutory waiver of state's immunity in wrongful death action); *Skinner* v. *Angliker*, 211 Conn. 370, 381, 559 A.2d 701 (1989) (noting legislature's waiver of state's immunity under General Statutes § 31-51g for employer's discharge of employee exercising constitutional rights). The presence of the savings clause, "except as otherwise provided by law," pertains only to state and federal statutes, not to the common law. *Sanzone* v. *Board of Police Commissioners*, 219 Conn. 179, 191–92, 592 A.2d 912 (1991). Therefore, the legislature has manifested its intention to abrogate governmental immunity under the statute. Moreover, because the pertinent legislative history surrounding § 52-557n (a) is silent as to the legislature's intent in enacting the statute, the defendants cannot rely on it to support a contrary interpretation. Cf. *Schiano* v. *Bliss Exterminating Co.*, supra, 260 Conn. 45 ("legislative history of [General Statutes] § 31-303 and the language of other provisions of the [Workers' Compensation Act] relating to the commissioner's authority to make an award of fees constitutes compelling evidence that, *despite the statutory language*, the

legislature did not intend for attorney's fees to be subject to the penalty provided for in § 31-303" [emphasis added]).

The defendants, however, advance three arguments in support of their contention that § 52-557n (a) does not permit a direct cause of action in negligence against a municipality. Specifically, they contend that the Appellate Court improperly construed the statute as abrogating municipal immunity because: (1) that interpretation creates a conflict with General Statutes §§ 7-465 (a)[5] and 7-308,[6] both of which provide for indemnifi-

[5] General Statutes § 7-465 (a) provides in relevant part: "Any town, city or borough, notwithstanding any inconsistent provision of law, general, special or local, shall pay on behalf of any employee of such municipality, except firemen covered under the provisions of section 7-308, and on behalf of any member from such municipality of a local emergency planning district, appointed pursuant to section 22a-601, all sums which such employee becomes obligated to pay by reason of the liability imposed upon such employee by law for damages awarded for infringement of any person's civil rights or for physical damages to person or property, except as hereinafter set forth, if the employee, at the time of the occurrence, accident, physical injury or damages complained of, was acting in the performance of his duties and within the scope of his employment, and if such occurrence, accident, physical injury or damage was not the result of any wilful or wanton act of such employee in the discharge of such duty. . . . No action for personal physical injuries or damages to real or personal property shall be maintained against such municipality and employee jointly unless such action is commenced within two years after the cause of action therefor arose nor unless written notice of the intention to commence such action and of the time when and the place where the damages were incurred or sustained has been filed with the clerk of such municipality within six months after such cause of action has accrued. Governmental immunity shall not be a defense in any action brought under this section. . . ."

[6] General Statutes § 7-308 (b) provides in relevant part: "Each municipality of this state, notwithstanding any inconsistent provisions of law, general, special or local, or any limitation contained in the provisions of any charter, shall pay on behalf of any paid or volunteer fireman or volunteer ambulance member of such municipality all sums which such fireman or volunteer ambulance member becomes obligated to pay by reason of liability imposed upon such fireman or volunteer ambulance member by law for damages to person or property, if the fireman or volunteer ambulance member, at the time of the occurrence, accident, injury or damages complained of, was performing fire or volunteer ambulance duties and if such occurrence, acci-

cation of municipal employees; (2) the absence of relevant legislative debate when the legislature enacted § 52-557n (a) indicates that it did not intend to abrogate common-law governmental immunity from negligence actions; and (3) by allowing a direct cause of action against a municipality under § 52-557n, which does not require that an employee be named as the tortfeasor, the Appellate Court eliminated the defense of qualified immunity. We reject all of these arguments.

The defendants first contend that the legislature did not intend to abrogate governmental immunity under § 52-557n (a) because such a result would permit a plaintiff to circumvent the procedural requirements under §§ 7-465 (a) and 7-308 (b), which allow a plaintiff to bring a joint action against a municipal employee and the indemnifying municipality if the plaintiff files with the municipality within six months a notice of his or her intention to bring such an action. See footnotes 5 and 6 of this opinion. The defendants contend that, because § 52-557n (a) imposes no such procedural requirement, plaintiffs would be able to use the statute to avoid dismissal of actions against municipalities otherwise time barred under §§ 7-465 (a) and 7-308 (b). We are not persuaded by the defendants' reasoning.

---

dent, injury or damage was not the result of any wilful or wanton act of such fireman or volunteer ambulance member in the discharge of such duties. . . . No action or proceeding instituted pursuant to the provisions of this section shall be prosecuted or maintained against the municipality or fireman unless at least thirty days have elapsed since the demand, claim or claims upon which such action or special proceeding is founded were presented to the clerk or corresponding officer of such municipality. No action for personal injuries or damages to real or personal property shall be maintained against such municipality and fireman unless such action is commenced within one year after the cause of action therefor has arisen nor unless notice of the intention to commence such action and of the time when and the place where the damages were incurred or sustained has been filed with the clerk or corresponding officer of such municipality and with the fireman within six months after such cause of action has accrued. . . ."

"In construing two seemingly conflicting statutes, we are guided by the principle that the legislature is always presumed to have created a harmonious and consistent body of law . . . . Accordingly, [i]f two statutes appear to be in conflict but can be construed as consistent with each other, then the court should give effect to both." (Citations omitted; internal quotation marks omitted.) *Nizzardo* v. *State Traffic Commission*, 259 Conn. 131, 157, 788 A.2d 1158 (2002).

The causes of action under the statutes are independent and are not mutually exclusive. Indeed, our statutes are replete with instances in which actions are authorized against the same defendant based upon the same course of conduct, subject to the plaintiff satisfying different procedural requirements, such as statutes of limitations. Had the legislature intended § 52-557n to incorporate the procedural requirements of § 7-465 or § 7-308, it could have referenced them. Cf. General Statutes § 31-306b (employer's failure to comply with notice requirements under statute does not excuse dependent of deceased employee from filing workers' compensation claim within time period prescribed under General Statutes § 31-294c). In the absence of any indication of the legislature's intent to require plaintiffs to comply with the procedural requirements under either § 7-308 or § 7-465 before invoking § 52-557n, we decline to engraft such language onto the statute. See *Laliberte* v. *United Security, Inc.*, 261 Conn. 181, 186, 801 A.2d 783 (2002) (declining to impose limitation in absence of provision in General Statutes § 31-307 [a] permitting discontinuance of workers' compensation total disability benefits based on incarceration). Similarly, had the legislature intended to retain § 7-465 or § 7-308 as the exclusive remedy, it could have done so in the text of § 52-557n as it did with regard to defective highway claims by its explicit reference to General Statutes § 13a-149.

We further note that subsection (b) of § 52-557n, which references subsection (a), sets forth many exceptions under which an injured party may not pursue a direct action in negligence against a municipality.[7] It is noteworthy that circumstances under which a plaintiff may bring an action under either § 7-308 or § 7-465 against the municipality is not one of the enumerated exceptions. "We have stated that [u]nless there is evidence to the contrary, statutory itemization indicates

---

[7] General Statutes § 52-557n (b) provides: "Notwithstanding the provisions of subsection (a) of this section, a political subdivision of the state or any employee, officer or agent acting within the scope of his employment or official duties shall not be liable for damages to person or property resulting from: (1) The condition of natural land or unimproved property; (2) the condition of a reservoir, dam, canal, conduit, drain or similar structure when used by a person in a manner which is not reasonably foreseeable; (3) the temporary condition of a road or bridge which results from weather, if the political subdivision has not received notice and has not had a reasonable opportunity to make the condition safe; (4) the condition of an unpaved road, trail or footpath, the purpose of which is to provide access to a recreational or scenic area, if the political subdivision has not received notice and has not had a reasonable opportunity to make the condition safe; (5) the initiation of a judicial or administrative proceeding, provided that such action is not determined to have been commenced or prosecuted without probable cause or with a malicious intent to vex or trouble, as provided in section 52-568; (6) the act or omission of someone other than an employee, officer or agent of the political subdivision; (7) the issuance, denial, suspension or revocation of, or failure or refusal to issue, deny, suspend or revoke any permit, license, certificate, approval, order or similar authorization, when such authority is a discretionary function by law, unless such issuance, denial, suspension or revocation or such failure or refusal constitutes a reckless disregard for health or safety; (8) failure to make an inspection or making an inadequate or negligent inspection of any property, other than property owned or leased by or leased to such political subdivision, to determine whether the property complies with or violates any law or contains a hazard to health or safety, unless the political subdivision had notice of such a violation of law or such a hazard or unless such failure to inspect or such inadequate or negligent inspection constitutes a reckless disregard for health or safety under all the relevant circumstances; (9) failure to detect or prevent pollution of the environment, including groundwater, watercourses and wells, by individuals or entities other than the political subdivision; or (10) conditions on land sold or transferred to the political subdivision by the state when such conditions existed at the time the land was sold or transferred to the political subdivision."

that the legislature intended [a] list to be exclusive." (Internal quotation marks omitted.) *State* v. *Vickers*, 260 Conn. 219, 225, 796 A.2d 502 (2002); see also *Gay & Lesbian Law Students Assn.* v. *Board of Trustees*, 236 Conn. 453, 476, 673 A.2d 484 (1996) (" '[w]here express exceptions are made, the legal presumption is that the legislature did not intend to save other cases from the operation of the statute' "); *Bridgeport Hospital* v. *Commission on Human Rights & Opportunities*, 232 Conn. 91, 101, 653 A.2d 782 (1995) (legislature's express exclusion of General Statutes § 46a-60 from General Statutes § 46a-86 [c] and [d] evidences intent not to authorize compensatory damages, other than back pay as provided for in subsection [b], and attorney's fees for employment discrimination). In the absence of any such reference to § 7-308 or § 7-465, we conclude that the statutes can coexist and that a party may choose to rely on either statute.

Next, the defendants argue that, because § 52-557n is such a radical departure from the common law, the silence in the pertinent legislative history surrounding § 52-557n indicates that the legislature did not intend to abrogate common-law governmental immunity. In essence, the defendants ask us to interpret the absence of debate by the legislature when enacting the statute as evidence that the legislature did not intend to abrogate the common law, even though the language of the statute indicates otherwise.

This argument is without merit. "[R]eliance on legislative silence is misplaced. It is a basic tenet of statutory construction that we rely on the intent of the legislature as that intent has been expressed." (Internal quotation marks omitted.) *Dept. of Social Services* v. *Saunders*, 247 Conn. 686, 706, 724 A.2d 1093 (1999). While we agree with the defendants that the absence of pertinent legislative debate on this statute is *perhaps* peculiar in light of the fact that the statute abrogates governmental

immunity, we cannot accept the absence of such debate as evidence that the legislature did not intend to abrogate common-law governmental immunity when the language of the statute plainly dictates otherwise. We often have stated that in determining whether a statute abrogates or modifies a common-law rule the construction must be strict. "It must be remembered [however] that the principle of narrowly construing statutes that purport to change the common law is not an absolute rule, but rather merely an important [guideline] to the determination of legislative meaning. To permit [the construction of the statute] to displace the conclusions that careful interpretation yields . . . would be a disservice to the legislative process, as well as to the judicial exercise of interpreting legislative language based upon the premise that the legislature intends to enact reasonable public policies." (Internal quotation marks omitted.) *Elliott* v. *Waterbury*, 245 Conn. 385, 406 n.14, 715 A.2d 27 (1998).

The defendants' final contention is that, by allowing a direct cause of action under § 52-557n, the court precludes as a matter of law the defense of qualified immunity. They claim that municipalities indirectly are affected by the defense because, if a plaintiff brings an action against an employee and the municipality under § 7-465, the employee may assert qualified immunity and thereby alleviate the municipality's duty to indemnify under that statute. Thus, according to the defendants, a direct cause of action under § 52-557n, which does not require that an employee be named as the tortfeasor, would essentially destroy the defense of qualified immunity. We are not persuaded.

"The [common-law] doctrines that determine the tort liability of municipal employees are well established. *Burns* v. *Board of Education*, 228 Conn. 640, 645, 638 A.2d 1 (1994). Although historically [a] municipality itself was generally immune from liability for its tortious

acts at common law; *Ryszkiewicz* v. *New Britain*, 193 Conn. 589, 593, 479 A.2d 793 (1984) . . . [municipal] employees faced the same personal tort liability as private individuals. *Gordon* v. *Bridgeport Housing Authority*, [208 Conn. 161, 165, 544 A.2d 1185 (1988)]. *Evon* v. *Andrews*, 211 Conn. 501, 505, 559 A.2d 1131 (1989). Over the years, however, [t]he doctrine of [qualified] immunity has provided some exceptions to the general rule of tort liability for municipal employees. *Burns* v. *Board of Education*, supra, 645. Generally, a municipal employee is liable for the misperformance of ministerial acts, but has a qualified immunity in the performance of governmental acts. Id. Governmental acts are performed wholly for the direct benefit of the public and are supervisory or discretionary in nature. *Gauvin* v. *New Haven*, 187 Conn. 180, 184, 445 A.2d 1 (1982). In contrast, [m]inisterial refers to a duty which is to be performed in a prescribed manner without the exercise of judgment or discretion. *Wright* v. *Brown*, 167 Conn. 464, 471, 356 A.2d 176 (1975). . . .

"A municipal employee's immunity for the performance of discretionary governmental acts is, however, qualified by three recognized exceptions: first, where the circumstances make it apparent to the public officer that his or her failure to act would be likely to subject an identifiable person to imminent harm . . . second, where a statute specifically provides for a cause of action against a municipality or municipal official for failure to enforce certain laws . . . and third, where the alleged acts involve malice, wantonness or intent to injure, rather than negligence. . . . *Burns* v. *Board of Education*, supra, 228 Conn. 645. Thus, [t]he presumption is that qualified rather than absolute immunity is sufficient to protect government officials in the exercise of their duties. *Burns* v. *Reed*, [500 U.S. 478, 486–87, 111 S. Ct. 1934, 114 L. Ed. 2d 547 (1991)]; see also *Malley* v. *Briggs*, [475 U.S. 335, 340, 106 S. Ct. 1092, 89 L. Ed.

2d 271 (1986)]; *Harlow* v. *Fitzgerald*, 457 U.S. 800, 807, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982). *DeLaurentis* v. *New Haven*, 220 Conn. 225, 243, 597 A.2d 807 (1991)." (Citation omitted; internal quotation marks omitted.) *Mulligan* v. *Rioux*, 229 Conn. 716, 727–28, 643 A.2d 1226 (1994), on appeal after remand, 38 Conn. App. 546, 662 A.2d 15 (1995).

In light of these principles, we reject the defendants' claim that permitting a direct cause of action against the municipality under § 52-557n, which does not require that an employee be named as the tortfeasor, would essentially destroy the defense of qualified immunity because it is supported neither by the purpose underlying the defense nor the statutory scheme. When a municipal employee is sued, he or she may assert qualified immunity as a common-law defense. This defense is intended to protect the employee, not the municipality that otherwise is cloaked with its own immunity absent express statutory abrogation. While a benefit accrues to the municipality when the employee successfully establishes qualified immunity, by permitting the municipality to avoid liability for indemnification, the defense is intended to benefit the employee in the exercise of his or her governmental duties.

Additionally, as we previously noted, §§ 52-557n and 7-465 are coextensive. We recognize that there *may* be circumstances under which a municipality is held liable under § 52-557n where it would have been able to avoid liability had suit been brought jointly against the employee and the municipality under § 7-465. This outcome, however, results from a clear legislative expression of an intent to abrogate municipal immunity independent of the availability of a claim under § 7-465. As long as this result is rational, "we may not judge the wisdom, desirability or logic of the legislative determi-

nation . . . ." *Broadley* v. *Board of Education*, 229 Conn. 1, 9, 639 A.2d 502 (1994).[8]

The judgment of the Appellate Court is affirmed.

In this opinion NORCOTT and PALMER, Js., concurred.

ZARELLA, J., with whom SULLIVAN, C. J., joins, concurring. I agree with the majority that General Statutes § 52-557n (a) (1) "clearly and expressly abrogates the traditional common-law doctrine in this state that municipalities are immune from suit for torts committed by their employees and agents. . . . Therefore, the legislature has manifested its intention to abrogate governmental immunity under the statute." (Citations omitted.) I also concur in the result.

I write separately to note my agreement with the majority insofar as it has declined to extend further the purposive approach to statutory interpretation first announced in *State* v. *Courchesne*, 262 Conn. 537, 577–78, 816 A.2d 562 (2003). The purposive approach requires the statutory interpreter to consider all of the circumstances surrounding the enactment of the legislation in attempting to divine the legislative intent even when the language of the statute under interpretation is clear and unambiguous. See id., 566, 577.

Specifically, I agree with the majority's rejection of the defendants' argument that the lack of any relevant legislative debate on § 52-557n (a) (1) suggests that the legislature did not intend to abrogate the common law. This seems to be a straightforward application of the commonsense notion that, when the legislature speaks "clearly and expressly," there is no further requirement

---

[8] Although § 52-557n does not require a plaintiff to identify the tortfeasor, it does not prohibit a plaintiff from doing so. Indeed, we recognize the fact that a plaintiff who fails to identify an alleged tortfeasor in his or her complaint would be faced with a *greater* burden in establishing negligence.

that the legislative history also affirmatively reflect that expressed intent. In short, I agree with the majority's rejection of the theory that nothing means something. Finally, I would only note that, in light of the majority's conclusion that the legislature has spoken "clearly and expressly," even affirmative legislative history favoring the defendants' interpretation should not change the result in this case. Cf. *W & D Acquisitions, LLC* v. *First Union National Bank*, 262 Conn. 704, 718, 817 A.2d 91 (2003) (*Zarella, J.*, concurring).

Accordingly, I concur.