## ASSURANCE COMPANY OF AMERICA ET AL. *v.* ANDREW M. YAKEMORE ET AL.

Superior Court, Complex Litigation Docket at Waterbury
File No. X01-CV-04-4001224S

Memorandum filed May 9, 2005

*Blackwell, Davis & Spadaccini* and *White & Williams, LLP*, pro hac vice, of the Pennsylvania bar, for the named plaintiff.

*Hampton Law Offices*, for the plaintiff KLM Rentals, Inc.

*Goldstein & Peck, P.C.*, for the named defendant et al.

*Williams, Walsh & O'Connor, LLC*, for the defendant Richard T. Paquette et al.

*Clark & Deakin, LLC*, for the defendant Michael Juda et al.

SHEEDY, J. The named plaintiff, Assurance Company of America (Assurance), is the subrogee of the coplaintiff, KLM Rentals, Inc. (KLM). The named defendant, Andrew M. Yakemore, developed, operated and constructed two acres of commercial premises in Simsbury where KLM leased space. The plaintiffs allege that the named defendant, in August, 1983, submitted building plans to the town of Simsbury (town) and sometime in September, 1984, applied to the town for a building permit. The plaintiffs further allege that a stop work order was issued by the town as the result of a report by a consulting engineer. That report cited numerous

construction deficiencies and various building code violations. The revised complaint dated October 25, 2004, alleges that the consulting engineer required the named defendant either to install a sprinkler system inside the building or to remove all wood from the building. Despite that, the plaintiffs assert that the named defendant proceeded with work on the building without having submitted plans to the town for the installation of a sprinkler system or the removal of all wood from the building or the installation of noncombustible fire divisions as had been recommended by the consulting engineer. In January, 1986, the town nevertheless issued a temporary certificate of occupancy for one portion of the building and, in February, 1986, issued a second temporary certificate of occupancy for another portion. The plaintiffs allege that no permanent certificate of occupancy was ever issued. Finally, the governing complaint asserts that in August, 1983, memos from both the consulting engineer and the town planner for the town stated that a fire hydrant needed to be located on the site in accordance with a requirement of the Simsbury fire district. The location of that hydrant was to be determined when the named defendant identified the location of the water main and the available water supply. The plaintiffs assert that the named defendant failed to provide a water main to supply a hydrant on the premises.

In April, 2003, a fire of unknown origin started in the concealed space between the first and second floors of the building. The plaintiffs allege that, within that space, there were wood trusses, no sprinklers and inadequate noncombustible fire walls. They further allege that the fire department was impeded in its efforts by the lack of an adequate water supply from hydrants outside the subject property and the absence of any fire hydrants on the property itself.

The coplaintiff claims damage to its personal and business property as well as damage to its business. The named plaintiff, an insurer, made indemnity payments for that damage and became subrogated to the coplaintiff's rights to the extent of such payments.

With a return date of May 25, 2004, the plaintiffs commenced suit in what is now an eighty-seven page complaint asserting twenty-eight counts against the named defendant, as an individual, and Andrew Yakemore and Edith Yakemore as trustees of the Andrew M. Yakemore revocable trust, Richard T. Paquette as building official for the town, the town itself for indemnification of its employees as well as for its own recklessness, Michael Juda as fire chief of the Simsbury fire department, the Simsbury fire department, Kevin Kowalski as fire marshal for the Simsbury fire district and the Simsbury fire district. All the defendants have moved to strike certain of the counts to which the plaintiffs have objected. The parties have fully briefed the issues and have waived oral argument in consenting to the court's adjudication of each of the three motions on the papers.

I

APPLICABLE LAW

"A motion to strike challenges the legal sufficiency of a pleading, and, consequently, requires no factual findings by the trial court." (Internal quotation marks omitted.) *Fort Trumbull Conservancy, LLC* v. *Alves*, 262 Conn. 480, 498, 815 A.2d 1188 (2003). It tests whether the complaint states a claim on which relief can be granted. Practice Book § 10-39 (a); *Vacco* v. *Microsoft Corp.*, 260 Conn. 59, 65, 793 A.2d 1048 (2002). The trial court's role is to examine the complaint and construe it in favor of the pleader. *Suffield Development Associates Ltd. Partnership* v. *National Loan Investors, L.P.*, 260 Conn. 766, 772, 802 A.2d 44 (2002). Specifically, the court must "assume the truth of both the specific factual allegations and any facts fairly provable

thereunder" and "read the allegations broadly, rather than narrowly." *Craig* v. *Driscoll*, 262 Conn. 312, 321, 813 A.2d 1003 (2003). The requirement of favorable construction does not extend, however, to legal opinions or conclusions stated in the complaint but only to factual allegations and the facts "necessarily implied and fairly provable under the allegations." (Internal quotation marks omitted.) *Forbes* v. *Ballaro*, 31 Conn. App. 235, 239, 624 A.2d 389 (1993). The motion is to be tested by the allegations of the pleading, which cannot be enlarged by the assumption of any facts not alleged therein. *Alarm Applications Co.* v. *Simsbury Volunteer Fire Co.*, 179 Conn. 541, 549–50, 427 A.2d 822 (1980). "If any facts provable under the express and implied allegations [of the] complaint support a cause of action . . . the complaint is not vulnerable to a motion to strike." *Bouchard* v. *People's Bank*, 219 Conn. 465, 471, 594 A.2d 1 (1991). "A motion to strike is properly granted if the complaint alleges mere conclusions of law that are unsupported by the facts alleged." *Fidelity Bank* v. *Krenisky*, 72 Conn. App. 700, 720, 807 A.2d 968, cert. denied, 262 Conn. 915, 811 A.2d 1291 (2002); *Donar* v. *King Associates, Inc.*, 67 Conn. App. 346, 349, 786 A.2d 1256 (2001).

## II

## FIRST, SECOND, FOURTH, TWENTIETH, TWENTY-SECOND, TWENTY-THIRD, TWENTY-FIFTH AND TWENTY-EIGHTH COUNTS (MOTION TO STRIKE FILED BY DEFENDANTS ANDREW YAKEMORE AND EDITH YAKEMORE)

Counts one and twenty-two assert causes of action in negligence[1] against the named defendant for his failure to design, construct, operate or maintain the property in accord with basic building and fire codes and for permitting the premises to be occupied without a

---

[1] The named plaintiff has brought count one, and the coplaintiff asserts count twenty-two. The allegations of each plaintiff are identical.

valid certificate of occupancy. The named defendant and his wife claim that the allegations are legally insufficient because they are beyond General Statutes § 52-584, the applicable statute of limitations. Section 52-584, applicable to both the negligence and recklessness claims, provides in pertinent part that an action must be brought "within two years from the date when the injury is first sustained or discovered or in the exercise of reasonable care should have been discovered, and except that no such action may be brought more than three years from the date of the act or omission complained of . . . ." The defendants argue that, because the negligent acts complained of occurred between the years 1983 and 1986 and because the present action was not brought until May 25, 2004, the negligence causes of action are time barred. The plaintiffs object, claiming that the named defendant engaged in a continuous course of conduct and that, therefore, the statute was tolled under *Johnson* v. *North Branford*, 64 Conn. App. 643, 781 A.2d 346, cert. denied, 258 Conn. 926, 783 A.2d 1028 (2001). Our Supreme Court, in *Witt* v. *St. Vincent's Medical Center*, 252 Conn. 363, 370, 746 A.2d 753 (2000), enunciated a three-pronged test to determine whether there is a continuous course of conduct that will toll the time limitations of § 52-584 by stating that the defendant must have "(1) committed an initial wrong upon the plaintiff; (2) owed a continuing duty to the plaintiff that was related to the alleged original wrong; and (3) continually breached that duty." The plaintiffs assert that, as a builder, the named defendant had a duty to comply with building and fire codes (but did not) and that he, as the property owner and landlord, had a duty to maintain the property so as to be in compliance as required by General Statutes § 47a-7 (but did not). His knowledge of such facts as the town's indications of various construction defects and his failure to remedy the same throughout the period of time

until the fire in April, 2003, the need to install a sprinkler system, and his awareness that a permanent certificate of occupancy had never issued when he leased the premises to the coplaintff, the plaintiffs assert, constitute a continuing course of conduct and a continuing breach of duties owed. Clearly, the failure to do what was necessary to install a sprinkler system, obtain a permanent certificate of occupancy, and correct construction deficiencies so as to comply with applicable codes relate to the original alleged wrongdoings. He is being sued not simply as the builder, but as the "operator" of the premises. Given that the court must assume the truth of the factual allegations and construe them broadly for the purpose of deciding this motion, the motion to strike these counts is denied.[2]

Counts two and twenty-three incorporate the negligence allegations of counts one and twenty-two in asserting the conduct of the named defendant in knowing of the failure of the building to comply with the applicable codes, in not locating a fire hydrant on the premises, and in not obtaining a permanent certificate of occupancy, which was "willful, wanton and reckless conduct." The defendants again assert that these counts are time barred by § 52-584. The court rejects this argument for the reason stated with regard to counts one and twenty-two. The defendants also claim these counts are legally insufficient because the conduct alleged is identical to the negligent conduct asserted in counts one and twenty-two. Accepting that Practice Book § 10-25 permits the pleading of alternative causes of action and accepting further that a trial court should examine whether the facts alleged support a cause of action in recklessness, the court is not persuaded either that the facts asserted represent such an extreme departure

[2] Though the case management order of September 28, 2004, permitted the filing of a reply to substantive motions, the named defendant chose not to file such pleading here.

from ordinary care or that the mere insertion in a pleading that the defendants acted in reckless disregard of the rights of others and that the defendants, therefore, have "notice" of such claim overcome the deficiencies of the factual allegations of these counts. Citing *Seymour* v. *Carcia*, 24 Conn. App. 446, 452, 589 A.2d 7 (1991), aff'd, 221 Conn. 473, 604 A.2d 1304 (1992), overruled in part on other grounds by *Marchetti* v. *Ramirez*, 240 Conn. 49, 688 A.2d 1325 (1997), the plaintiffs themselves argue in their opposing memorandum that a trial court has the duty not to submit to the jury any issue on which the evidence would not support a finding. The facts in *Seymour* are easily distinguished from the facts presented here. There, the female driver consumed sufficient alcohol to reach a level of intoxication two and one-half times the legal limit and continued to drink with full knowledge of the need to operate her car thereafter. As the court stated in *Seymour*, the issue that must always be resolved is "whether the facts as adduced . . . permit a rational inference . . . [of] reckless indifference to the rights of others . . . ." *Seymour* v. *Carcia*, supra, 452. In order for a person's conduct to rise to the level of recklessness, there must be a realization by that person that his conduct involves a risk so substantial that his conduct goes beyond negligence. *Bishop* v. *Kelly*, 206 Conn. 608, 614–15, 539 A.2d 108 (1988). While it is so that a reckless state of mind can be inferred from a person's conduct, for the inference to be drawn, there must be "something more than a failure to exercise a reasonable degree of watchfulness to avoid danger to others or to take reasonable precautions to avoid injury to them." *Dubay* v. *Irish*, 207 Conn. 518, 532, 542 A.2d 711 (1988). "Simply using the word reckless or recklessness is not enough." *Dumond* v. *Denehy*, 145 Conn. 88, 91, 139 A.2d 58 (1958). Close examination of the plaintiffs' pleading supports the court's finding that the allegations of these counts are

mere conclusory allegations which, in restating the acts or omissions of counts one and twenty-two, fall short of asserting causes of action in recklessness. Specifically, many of the assertions of the revised complaint are stated "upon information and belief." See, for example, paragraphs eighteen, nineteen, twenty-three and twenty-six of count one incorporated in count two with regard to the defendants' alleged failure to submit to the town plans for the "installation of a sprinkler system or for the removal of all wood from the building and the installation [of] non-combustible fire divisions between the uses as had been *recommended*"; (emphasis added); and the failure "to obtain a Permanent Certificate of Occupancy," two allegations clearly subject to verification. That such assertions provide a basis for a claim of recklessness given the less than definitive expressions of the complaint are not to be encouraged. Further, paragraph twenty-nine of the first count and paragraph twenty-seven of the twenty-second count (incorporated in counts two and twenty-three) make clear that noncombustible fire walls *were* constructed, although they may, in fact, have been inadequate. Counts two and twenty-three do not assert conduct sufficiently different in degree from the negligent conduct elsewhere asserted to support a conclusion that the named defendant made a conscious choice to do as he did either with knowledge of the serious danger that conduct posed to others or with knowledge of such facts that would disclose to any reasonable person the serious danger to others. The motion to strike counts two and twenty-three is, therefore, granted.

The defendants next argue that the claims under the Connecticut Unfair Trade Practices Act (CUTPA); General Statutes § 42-110a et seq.; asserted in counts four, twenty, twenty-five and twenty-eight should be stricken because first, they are time barred by the three year

statute of limitations of General Statutes § 42-110g (f), and, second, the third prong of the "cigarette rule" is not met here. As to the first argument, the defendants correctly cite language in *Fichera* v. *Mine Hill Corp.*, 207 Conn. 204, 541 A.2d 472 (1988), to the effect that the language of this statute "precludes any construction thereof delaying the start of the limitation period until the cause of action has accrued or the injury has occurred." Id., 212.[3] The problem for this court is that *Fichera* was decided on the basis of that court's analysis in 1988 of the legislative intent in enacting the personal injury statute of limitations contained in § 52-584. Citing *Kennedy* v. *Johns-Manville Sales Corp.*, 135 Conn. 176, 62 A.2d 771 (1948), the *Fichera* court noted our Supreme Court had previously held that "even where the wrongful act could not reasonably have been discovered until after the statute had run, any action seeking damages for such an 'act or omission' was barred." *Fichera* v. *Mine Hill Corp.*, supra, 213. The court concluded that any difference in language in the textual context of §§ 52-584 and 42-110g (f) was of no consequence there and found that there was no tolling of the statute under the circumstances presented there. Id. That ignores, however, our Supreme Court's holding in *Witt*, that, under certain conditions, the statute of limitations in § 52-584 may be tolled. Moreover, since this court has concluded earlier that the facts asserted permit a finding of a continuous course of conduct with regard to the negligence claims and since no reason exists to conclude that the same is not applicable to a

[3] To the contrary, the plaintiffs, in their memorandum of law, attribute to *Fichera* v. *Mine Hill Corp.*, supra, 207 Conn. 204, language *not* found there. *Fichera* is not only totally unhelpful to the plaintiffs because it reaches the conclusion urged by the defendants, given the plaintiffs' misstatement of the law and obvious inattention to detail, and it not only disserves the court, but it is also an impediment to legal scholarship of the sort that makes suspect every other citation in the body of work. Their further citation to *Handler* v. *Remington Arms Co.*, 144 Conn. 316, 130 A.2d 793 (1957), is also not relevant in that *Handler* is a negligence case.

CUTPA claim, the court rejects the defendants' first argument.

Under this state's "cigarette rule," recognized by the Federal Trade Commission in enforcing the federal statute on which CUTPA is modeled, courts must consider: "(1) [W]hether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise—whether, in other words, it is within at least the penumbra of some common law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; [and] (3) whether it causes substantial injury to consumers [competitors or other businessmen]." (Internal quotation marks omitted.) *Jacobs* v. *Healey Ford-Subaru, Inc.*, 231 Conn. 707, 725, 652 A.2d 496 (1995). The defendants focus on the third strand of this test for "unfairness" in arguing that, to satisfy this third prong of the inquiry, the injury must not only be substantial but "also must not be outweighed by any countervailing benefits to consumers or competition that the practice produces . . . ." (Internal quotation marks omitted.) *Williams Ford, Inc.* v. *Hartford Courant Co.*, 232 Conn. 559, 592, 657 A.2d 212 (1995). The argument fails to recognize that "[a]ll three criteria do not need to be satisfied to support a finding of unfairness. A practice may be unfair because of the degree to which it meets one of the criteria or because to a lesser extent it meets all three." (Internal quotation marks omitted.) *Fink* v. *Golenbock*, 238 Conn. 183, 215, 680 A.2d 1243 (1996). They alternatively claim, however, that no determination with regard to these CUTPA counts can be made here because in no one of these counts do the plaintiffs set forth how or in what respect the alleged activities are "immoral" or "unethical" or "oppressive" or "unscrupulous," nor do any of these counts assert in what way(s) the defendants' actions

are inimical to this state's public policy. The purpose of a pleading is to put the defendant on notice of the specific claims to be argued at trial. The pattern established in the revised complaint is the assertion, in the negligence counts, of various violations of this state's fire safety and basic building codes and then to assert, in subsequent counts, the same violations—without more—as both recklessness and CUTPA violations. Allegations of negligence alone are insufficient to support a CUTPA claim. See *A-G Foods, Inc.* v. *Pepperidge Farm, Inc.*, 216 Conn. 200, 214–17, 579 A.2d 69 (1990); *Thames River Recycling, Inc.* v. *Gallo*, 50 Conn. App. 767, 784–86, 720 A.2d 242 (1998). Without specificity in the ways previously described, it cannot be said that the defendants are put on notice as to the plaintiffs' claims. Nor do arguments advanced in a memorandum cure the defects of a pleading. Additionally, the court rejects the plaintiffs' argument that the defendants' duty as a landlord for example, is relevant regarding the CUTPA claims. The existence of a duty is not a prerequisite for the finding of a CUTPA violation, and the defendants' declining to do that which was not required does not violate public policy. *Downes-Patterson Corp.* v. *First National Supermarkets, Inc.*, 64 Conn. App. 417, 427, 780 A.2d 967, cert. granted on other grounds, 258 Conn. 917, 782 A.2d 1242 (2001) (appeal dismissed June 25, 2002). There is no claim here, for example, that the defendants were required to tell the coplaintiff that no permanent certificate of occupancy was ever obtained. Failure to disclose can be deceptive only if, in light of all the circumstances, there is a duty to disclose. "[T]he general rule is that . . . silence . . . cannot give rise to an action . . . ." (Internal quotation marks omitted.) *Miller* v. *Guimaraes*, 78 Conn. App. 760, 776, 829 A.2d 422 (2003). Under the facts alleged in this pleading, this court cannot conclude that there was a duty to disclose as a matter of law. The motion to strike counts four,

twenty, twenty-five and twenty-eight, therefore, is granted.

This court does not rule on that portion of the defendants' pleading which asks that the request for punitive damages be stricken. The defendants cite no authority for the same, and Practice Book § 10-39 (a) clearly does not provide authority for that proposition. Suffice it to say punitive damages are not recoverable in the absence of a finding of recklessness or a violation of CUTPA and those claims are stricken here. Also relevant is the plaintiffs' failure to cite Connecticut law establishing that the named plaintiff (an insurer) as subrogee, acquires rights greater than those of the coplaintiff, its insured. Contra *Wasko* v. *Manella*, 269 Conn. 527, 536, 849 A.2d 777 (2004), cited by the plaintiffs. In fact, the plaintiffs frequently iterate in their complaint their entitlement to recover "to the extent of said payments."

### III

### COUNTS NINE, ELEVEN, TWELVE, FOURTEEN, FIFTEEN, SIXTEEN, SEVENTEEN AND EIGHTEEN (MOTION TO STRIKE FILED BY DEFENDANTS JUDA, KOWALSKI, THE SIMSBURY FIRE DEPARTMENT AND THE SIMSBURY FIRE DISTRICT)

Count nine alleges that Juda, fire chief of the Simsbury fire department, was negligent (a) in failing to do what was necessary to increase the water supply or pressure in the fire hydrant adjacent to the subject premises when, "upon information and belief," he knew that the hydrant had a water flow inadequate to fight a fire effectively; (b) in failing to require that a fire hydrant be installed on the subject property when, "upon information and belief," he knew of the absence of one upon the premises; and (c) in failing to advise the coplaintiff of the absence of both a "required" fire hydrant on the property and an adequate water supply to fight a fire there, thus resulting in the spread of the

fire on April 23, 2003, with resultant damages to the plaintiffs. Count eleven asserts the fire department's obligation to indemnify Juda under General Statutes § 7-308. Count twelve asserts that Kowalski, fire marshal for the Simsbury fire district, was negligent in (a) failing to enforce specific provisions of this state's building and fire safety codes when it is alleged that he had a duty to inspect for code compliance under General Statutes § 29-298; (b) permitting the named defendant to lease the premises knowing of such violations and that there was no permanent certificate of occupancy; (c) failing to require the named defendant to install a hydrant on the property; (d) failing to ensure an adequate water supply in the hydrant on the adjacent property; (e) "creating a high risk of harm" to the plaintiffs by not enforcing code requirements; and (f) failing to inspect or negligently inspecting for code violations. Count fourteen alleges the fire district's obligation under § 7-308 to indemnify Kowalski for his alleged negligence. The defendants have moved to strike these counts because (a) Juda and Kowalski were performing discretionary duties and are thus entitled to governmental immunity for the claimed acts, and (b) the Simsbury fire department and fire district are not obligated to indemnify in view of the employees' immunity. The plaintiffs object and argue that Juda's and Kowalski's duties are ministerial, and that they consequently are not entitled to governmental immunity, and, thus, the employers are statutorily liable for the purpose of indemnification.

Section 29-298 (b) provides in relevant part: "No local fire marshal, deputy fire marshal, fire inspector or other inspector or investigator acting for a local fire marshal, who is charged with the enforcement of the Fire Safety Code and this chapter, may be held personally liable for any damage to persons or property that may result from any action that is required or permitted in the

discharge of his official duties while acting for a municipality or fire district. . . . No such fire marshal, deputy fire marshal, fire inspector or other inspector or investigator may be held responsible for or charged with the costs of any such legal proceeding. Any officer of a local fire marshal's office, if acting without malice and in good faith, shall be free from all liability for any action or omission in the performance of his official duties."

Section 7-308 (b) provides in relevant part: "Each municipality of this state . . . shall pay on behalf of any paid or volunteer fireman . . . of such municipality all sums which such fireman . . . becomes obligated to pay by reason of liability imposed upon such fireman . . . by law for damages to person or property, if the fireman . . . at the time of the occurrence . . . was performing fire . . . duties and if such occurrence . . . was not the result of any wilful or wanton act of such fireman . . . in the discharge of such duties. . . ."

Section 7-308 (b) further provides that "[n]o action for personal injuries or damages . . . shall be maintained against such municipality and fireman unless . . . commenced within one year after the cause of action therefor arose and notice of the intention to commence such action . . . has been filed with the . . . municipality and with the fireman within six months after [the] cause of action has accrued. . . . Governmental immunity shall not be a defense in any action brought under this section . . . ."

At common law, a municipality was generally immune from liability for its tortious acts. *Conway* v. *Wilton*, 238 Conn. 653, 672, 680 A.2d 242 (1996). General Statutes § 52-557n both codified and modified the common law of municipal and municipal employee liability and immunity as part of the original Tort Reform Act

of 1986. Section 52-557n (a) (2) (B) provides in relevant part that, except as otherwise provided by law, a political subdivision of the state shall not be liable for damages to person or property caused by "negligent acts or omissions which require the exercise of judgment or discretion as an official function of the authority expressly or impliedly granted by law." See also *Elliott* v. *Waterbury*, 245 Conn. 385, 411, 715 A.2d 27 (1998). The traditionally employed distinction is as between "governmental" acts, which are performed wholly for the direct benefit of the public and are supervisory or discretionary in nature, and "ministerial" acts, which are performed in a prescribed manner without the exercise of judgment or discretion as to the propriety of the action. *Hannon* v. *Waterbury*, 106 Conn. 13, 17, 136 A. 876 (1927); *Kolaniak* v. *Board of Education*, 28 Conn. App. 277, 280, 610 A.2d 193 (1992).

Negligence in failing to enforce properly applicable statutes, regulations or codes, to make reasonable and proper inspections of a multifamily rental unit for fire safety hazards, and to prescribe remedial action to be taken by owners were "acts . . . [that] required in some measure the exercise of judgment by a municipal employee" and "were not ministerial." *Evon* v. *Andrews*, 211 Conn. 501, 507, 559 A.2d 1131 (1989). While it is so that statutes, regulations and policies *can* create ministerial duties, when they relate to fire, police, or other public safety services, they are most often held to create discretionary duties. See, e.g., id., 505; *Gordon* v. *Bridgeport Housing Authority*, 208 Conn. 161, 169–70, 544 A.2d 1185 (1988); *Shore* v. *Stonington*, 187 Conn. 147, 153, 444 A.2d 1379 (1982); *Sestito* v. *Groton*, 178 Conn. 520, 527, 423 A.2d 165 (1979); *Stiebitz* v. *Mahoney*, 144 Conn. 443, 446, 134 A.2d 71 (1957); *Alexander* v. *Vernon*, Superior Court, judicial district of Tolland, Complex Litigation Docket, Docket No. X07-CV-02 0078935S (May 3, 2004) (*Sferrazza, J.*). Thus, govern-

mental immunity attaches absent an applicable exception to the qualified immunity of municipal agents engaged in discretionary acts. While the plaintiffs here do not claim an exception, they argue that the acts at issue are ministerial under *Kolaniak* v. *Board of Education*, supra, 28 Conn. App. 277. The court concluded there that the determination as to when to clear a sidewalk was ministerial—not discretionary—based upon a bulletin previously issued to school custodians and maintenance persons that school walkways were to be inspected and kept clean on a daily basis and, further, that while on duty, it was the duty of those maintenance personnel and custodians to keep the walkways clear of ice and snow. There was no evidence that the subject walkway had been shoveled, salted or sanded prior to the student's fall. The court rejected the defendant's claim that the jury should have determined whether the employees' acts were discretionary and, therefore, whether governmental immunity attached in stating, "[T]he board of education's bulletin . . . was clear–they were to keep the walkways clear of snow and ice. We will not equate the act of clearing snow and ice by maintenance workers, in accordance with a directive by the policymaking board of education, with the policy decisions that are usually afforded protection by the doctrine of governmental immunity." Id., 281. The plaintiffs in the present case reason that because they allege that the "Town of Simsbury required that a fire hydrant be placed on the property" and because Juda "failed to ensure" that was done, *Kolaniak* dictates a finding that the duties in issue were ministerial. Unlike *Kolaniak*, however, the plaintiffs point to no statute or directive or regulation which makes it Juda's duty to enforce the town's alleged "requirement" that the named defendant install a fire hydrant on the property or to increase the water supply or pressure in the hydrant on the adjacent property or that he had the

duty to advise the coplaintiff that there was not the "required" fire hydrant on the property and that there was an inadequate water supply to fight a fire on the premises. The applicability of *Kolaniak* is not supported by an examination of the plaintiffs' allegations in count nine and, absent allegations that Juda had the duty to require the named defendant to install a hydrant or to warn the coplaintiff or somehow to increase the output of the neighboring hydrant, it cannot be said that Juda's alleged failure to take either enforcement or remedial action in the ways asserted were anything other than the kind of policy decisions the *Kolaniak* court recognized as "usually afforded protection . . . ." *Kolaniak* v. *Board of Education,* supra, 281. The acts asserted are discretionary because they involve the exercise of judgment and, therefore, are afforded governmental immunity. There is no claim in count nine, or which otherwise survives this motion, that his acts were wilful or wanton. It necessarily follows, therefore, that there is no obligation for the Simsbury fire department to indemnify Juda under those circumstances. The motion is granted, therefore, as to counts nine and eleven.[4]

Similarly, the conduct of Kowalski alleged in count twelve amounts to a negligent failure to inspect the subject property, a failure to ensure an adequate water supply regarding the fire hydrant on the street and a failure to take enforcement action against the named defendant for not having a hydrant on his property. They are not ministerial duties but the performance of wholly public duties involving his judgment how, when, or if, to take remedial or enforcement actions, to inspect, and the like. He is afforded immunity under § 29-298 (b) absent any allegation he was acting without malice and in good faith (an allegation not made here). There is no cause of action either in count twelve—

[4] Neither party has raised the issue of the internal statute of limitations imposed by General Statutes § 7-308 (b), and the court finds it unnecessary to address that issue, given the adjudication regarding these counts.

or otherwise surviving—that Kowalski's conduct was reckless. Though the plaintiffs reference a violation of General Statutes § 29-305 in their memorandum, it is their complaint which governs and nowhere therein is a violation of that statute alleged nor is there any authority cited for the proposition that the statute (a) affords a private cause of action or (b) creates a ministerial duty to inspect. The statute's provision that a local fire marshal inspect "at least once each calendar year and as often as may be necessary" all buildings regulated by the fire safety code invokes a discretionary duty and it is relevant that count twelve makes no claim that Kowalski ever did a yearly inspection. Counts twelve and fourteen fail for the same reasons as do counts nine and eleven and, therefore, they are stricken.

Count fifteen alleges negligence on the part of the Simsbury fire department in failing to inspect the subject property and failing to ensure that the subject property had a sufficient water supply to fight a fire on the premises when it had notice of a violation of the fire code. Count seventeen alleges that the Simsbury fire district is liable in negligence for its failure to inspect the property, its failure to ensure the installation of a fire hydrant on that property and its failure to ensure a water supply to the premises was adequate to fight a fire—all with notice of a violation of the fire code. As the plaintiffs state, § 52-557n permits a direct cause of action against municipalities (or, as here, political subdivisions) without specifically referencing named agents or employees.[5] The defendants do not dispute that, but they state that a political subdivision may act only through its employees and, if the acts of those

---

[5] Our Supreme Court, in *Spears* v. *Garcia*, 263 Conn. 22, 32, 818 A.2d 37 (2003), in recognizing a direct action against a municipality, concluded that a cause of action under § 52-557n and a cause of action (for indemnity) under General Statutes §§ 7-308 or 7-465 were independent causes of action and not mutually exclusive.

employees were (as found here) discretionary, those employees and the fire department and fire district, as their employers, are entitled to immunity. The defendants' argument, while appealing, was implicitly rejected by our Supreme Court in *Spears* v. *Garcia*, 263 Conn. 22, 818 A.2d 37 (2003). Essentially, the defendants argue that this direct action ought be viewed as a claim brought under General Statutes §§ 7-308 or 7-465; yet, "[t]he causes of action under the statutes are independent and are not mutually exclusive." *Spears* v. *Garcia*, supra, 32. That court also determined that to permit a direct cause of action under § 52-557n does not abrogate the defense of qualified immunity because that is a defense available only to the municipal employee in the exercise of his or her governmental duties. Id., 37.

There is here, however, an anomaly. The plaintiff in *Spears* (as these plaintiffs) failed to cite in her complaint a statute which abrogated governmental immunity; in her memorandum in opposition to the motion for summary judgment, however, she argued on the basis of § 52-577n. Although only in passing, the plaintiffs here reference § 52-557n in their memorandum— but they do so only as a statement of the court's holding in *Spears*. No analysis or argument that § 52-577n is applicable here is advanced. Were these facts the only facts available, it would be a closer call regarding whether counts fifteen and seventeen should survive a motion to strike. Yet, not only does the complaint not reference § 52-577n, but it specifically references §§ 7-308 and 7-465, statutes providing for the indemnification of municipal employees. The inclusion of those statutory references, together with the plaintiffs' failure to argue on the basis of § 52-577n, requires the conclusion that there is not any notice to the defendants that the plaintiffs intended to rely on § 52-577n here. Further, the inclusion of those references supports the defendants'

argument that, because a municipality or political subdivision can act only through its agents or employees, and because this court has determined that the specific conduct asserted as to Juda and Kowalski constitute discretionary acts, these counts are legally insufficient. Counts fifteen and seventeen are, therefore, stricken.

Count sixteen asserts that the Simsbury fire department was reckless in the ways alleged in count fifteen and discussed previously; count eighteen alleges that the Simsbury fire district was reckless in the ways asserted in count seventeen and discussed previously. For the reasons stated herein with regard to counts fifteen and seventeen and for the reasons herein advanced with regard to counts two and twenty-three directed to codefendant Yakemore, counts sixteen and eighteen are stricken. In order to infer recklessness, "there must be something more than a failure to exercise a reasonable degree of watchfulness to avoid danger to others or to take reasonable precautions to avoid injury to them. . . . [S]uch . . . conduct tends to take on the aspect of highly unreasonable conduct, involving an extreme departure from ordinary care, in a situation where a high degree of danger is apparent." (Internal quotation marks omitted.) *Elliott* v. *Waterbury*, 245 Conn. 385, 415, 715 A.2d 27 (1998). These defendants' motion to strike is, therefore, granted in its entirety.

IV

COUNTS SIX, SEVEN, EIGHT AND TWENTY-ONE
(MOTION TO STRIKE FILED BY DEFENDANTS
PAQUETTE AND THE TOWN)

Paquette is identified only as a "building official" employed by the town of Simsbury. Count six of the revised complaint alleges his negligence in failing to enforce certain provisions of this state's building and fire safety codes; failing to require the named defendant to install a fire hydrant on the premises so as to ensure an adequate flow of water from the street fire hydrant

to this property; failing to inspect (or inadequately inspecting) the property at issue when he had notice of violations of the referenced codes; and, failing to cure those violations. The complaint further alleges his negligence in permitting the named defendant to operate and lease the premises that Paquette knew were in violation of the codes and without a permanent certificate of occupancy, in permitting work to continue on the property when a stop work order had issued and in creating a high risk of harm to these plaintiffs by failing to enforce the referenced codes. Count seven alleges that the town of Simsbury is liable to indemnify Paquette for his alleged negligent acts under § 7-465.

The defendants have moved to strike these counts as beyond the statute of limitations or repose of § 52-584. The plaintiffs have objected and claim that the statute is tolled because a continuous course of conduct is pleaded. An examination of the allegations of negligence in paragraph thirty-five of count six makes clear that the allegations of negligence relate back to at least as early as 1985 and continued until April 23, 2003, when the fire occurred. Incorporated herein is this court's analysis provided with regard to adjudication of counts one and twenty-two as directed to the named defendant. Assuming as it must the truth of the factual allegations of paragraph thirty-five of count six and construing them broadly for the purpose of this motion, the court must deny the defendants' motion to strike counts six and seven.[6]

Count eight asserts a direct action against the town under § 52-557n for its alleged recklessness in failing to enforce code provisions, permitting occupancy of the building when it knew no permanent certificate of

---

[6] These defendants have also chosen not to file a reply to the plaintiffs' memorandum in opposition despite the governing case management order permitting them to do so.

occupancy had been issued or could be issued in view of the asserted violations, permitting the street fire hydrant to be without an adequate water supply to fight a fire on the property in issue when it knew that there were no fire hydrants on the subject premises, and the like. These defendants argue that the claims advanced in this count are the same allegations of negligence asserted against Paquette in count six and are mere conclusory allegations. The difference here, however, is that facts fairly provable under the allegations of count eight show that it was the building department which retained the consulting engineer to review the construction of the property and it, consequently received Mayo's report detailing the various deficiencies in such construction and code violations. Further, it was the building department which issued the stop work order for reason of such violations and deficiencies and which, therefore, knew that work proceeded again without the deficiencies and violations having been cured. Moreover, it was the building department which issued the temporary certificate of occupancy, and it would have been this very same department which would issue a permanent certificate of occupancy. In view of the specific duties of this department and the claimed breach of those duties, this court cannot conclude that the town's actions were not made with reckless disregard of the public safety and, thus, are legally sufficient to state such a claim. The motion to strike count eight is, therefore, denied.

Count twenty-one is a claim against the town directly for its negligence in the ways asserted in count six as against Paquette. Again, the defendants claim only that this count should be stricken for reason of the time limitations of § 52-584. The court is unpersuaded for the reason previously stated with regard to counts six and seven, and the motion to strike this count is, therefore, denied.

The court incorporates here its earlier comments with regard to codefendant Yakemore's motion to strike the request for punitive damages.

Paquette's and the town's motion to strike is denied in its entirety.

The plaintiffs shall amend their complaint in accord with this adjudication within thirty days of this date; the remaining defendants shall file a responsive pleading within fifteen days thereafter, and the plaintiffs shall close the pleadings and file a certificate of closed pleadings within ten days after responsive pleadings have been filed.