ELEANOR MYERS *v.* CITY OF HARTFORD ET AL.
(AC 23922)

Foti, Flynn and McLachlan, Js.

Argued January 21—officially released August 10, 2004

*Sydney T. Schulman*, with whom, on the brief, was *Jessica J. York*, for the appellant (plaintiff).

*Andrew J. Schneider*, for the appellees (defendants).

### Opinion

FLYNN, J. The plaintiff, Eleanor Myers, appeals from the judgment of the trial court rendered following the granting of a motion for a directed verdict in favor of the defendants, the city of Hartford, Edward Grodecki and Saundra Keye Borges. The plaintiff claims that the directed verdict was granted improperly on the basis of qualified municipal immunity because the court analyzed the plaintiff's claims under General Statutes § 52-557n (a) (2), rather than under General Statutes § 7-465, the terms of which do not allow for this type of municipal immunity. The plaintiff also claims that even if the court had analyzed the issues under the proper statute, the actions of the municipality's employees fall within exceptions to this type of immunity. We affirm the judgment of the trial court.

In April 1999, in response to several complaints about roaming dogs, Grodecki, an animal control officer for the city of Hartford, removed a dog from the plaintiff's premises. After being informed by a neighbor that the plaintiff was the animal's owner, Grodecki waited approximately five minutes for the plaintiff to return home. When she did not appear, he removed the dog to a veterinary clinic and ordered that the animal be

euthanized, allegedly because the animal was in such poor physical condition that the only humane alternative was to put the animal down. He did not seek authorization for the euthanization from a veterinarian as required by General Statutes § 22-329a. In addition, Grodecki never informed the owner of his seizure and custody of the dog and did not place an advertisement in a newspaper in an effort to identify the animal's owner. Several days later, the plaintiff learned that her dog had been euthanized.

The plaintiff subsequently brought an action against Grodecki and Borges in their official capacities as animal control officer and city manager, respectively, for intentional and negligent infliction of emotional distress, and against the municipality as indemnitor for its employees. After presentation of the plaintiff's case-in-chief, the defendants filed a motion for a directed verdict. On January 24, 2003, the court heard arguments and granted the motion, ruling that the defendants were protected by qualified municipal immunity, pursuant to General Statutes § 52-557n (a) (2). Judgment was rendered for the defendants. The plaintiff now appeals.

"A motion for a directed verdict is warranted only if, considering the evidence presented, the jury could not reasonably have found in favor of the nonmoving party. . . . In the present case, the trial court based its decision to grant the defendants' motion for a directed verdict on its interpretation of [qualified municipal immunity]. Because this presents a pure question of law, our review is plenary." (Citation omitted.) *DeLeo* v. *Nusbaum*, 263 Conn. 588, 593, 821 A.2d 744 (2003).

The plaintiff claims that the directed verdict was granted improperly on the basis of qualified municipal immunity because her claims should have been evaluated under § 7-465, as pleaded by the plaintiff, which does not allow for qualified governmental immunity,

rather than under § 52-557n (a) (2), on which the court relied in directing a verdict for the defendants. We agree with the plaintiff that § 7-465 is the proper analytical reference, but disagree with her claim that the individual defendants could not raise the defense of qualified governmental immunity. We find, however, that her claim fails on other grounds.[1]

Section 7-465 provides in relevant part: "(a) Any town, city or borough, notwithstanding any inconsistent provision of law, general, special or local, shall pay on behalf of any employee of such municipality . . . all sums which such employee becomes obligated to pay by reason of the liability imposed upon such employee by law for damages awarded . . . for physical damages to person or property, except as hereinafter set forth, if the employee, at the time of the occurrence, accident, physical injury or damages complained of, was acting in the performance of his duties and within the scope of his employment, and if such occurrence, accident, physical injury or damage was not the result of any wilful or wanton act of such employee in the discharge of such duty. . . . Governmental immunity shall not be a defense in any action brought under this section . . . ."

The court analyzed the claims under § 52-557n (a), which provides in relevant part: "(1) Except as otherwise provided by law, a political subdivision of the state shall be liable for damages to person or property caused by: (A) The negligent acts or omissions of such political subdivision or any employee, officer or agent thereof acting within the scope of his employment or official duties; (B) negligence in the performance of functions from which the political subdivision derives a special

---

[1] "Where the trial court reaches a correct decision but on mistaken grounds, this court has repeatedly sustained the trial court's action if proper grounds exist to support it." (Internal quotation marks omitted.) *State* v. *John G.*, 80 Conn. App. 714, 726, 837 A.2d 829 (2004).

corporate profit or pecuniary benefit; and (C) acts of the political subdivision which constitute the creation or participation in the creation of a nuisance . . . . (2) Except as otherwise provided by law, a political subdivision of the state shall not be liable for damages to person or property caused by: (A) Acts or omissions of any employee, officer or agent which constitute criminal conduct, fraud, actual malice or wilful misconduct; or (B) negligent acts or omissions which require the exercise of judgment or discretion as an official function of the authority expressly or impliedly granted by law."

"Section 52-557n of the General Statutes was enacted . . . in response to rapidly rising insurance rates, which, some believed, would be curtailed if tort liability could be limited and systematized. As finally enacted, the act represents a complex web of interdependent concessions and bargains struck by hostile interest groups and individuals of opposing philosophical positions." *Sanzone* v. *Board of Police Commissioners*, 219 Conn. 179, 185, 592 A.2d 912 (1991).

Our Supreme Court has not found the legislative history of § 52-557n helpful and has concluded that it is unclear whether the statute's limitation on the liability of political subdivisions is intended to supersede provisions of the indemnification statute, § 7-465. Id., 188. "Unfortunately, the legislative history of § 52-557n is worse than murky; it is contradictory. . . . The transcripts of legislative hearings on the bill are full of heated debate . . . dealing with municipal liability, but the legislators seemed not to agree as to its meaning. The record of legislative debate does indicate that [it] was intended, in a general sense, both to codify and to limit municipal liability, but it also reflects confusion with respect to precisely what part of the preexisting law was being codified, and what part was being limited." Id.

Without the guidance of legislative history, we must look to the language of §§ 7-465 and 52-557n to determine a workable and logical interpretation of the interplay between these two statutes and the common law. "[W]e presume that the legislature intends sensible results from the statutes it enacts." (Internal quotation marks omitted.) *Hibner* v. *Bruening*, 78 Conn. App. 456, 459, 828 A.2d 150 (2003). With this in mind, we conclude that the plaintiff is correct that the court improperly analyzed her claims under § 52-557n. This section deals with claims that are brought directly against the municipality; see *Spears* v. *Garcia*, 263 Conn. 22, 37, 818 A.2d 37 (2003); and is inapplicable in an indemnification claim under § 7-465, which provides that immunity does not apply to such a claim. This case was brought against the individual defendants, Borges and Grodecki, and the municipality only was to be joined as indemnitor if liability was established against the individuals. Section 52-557n does not "bar a plaintiff from asserting causes of action in tort against those individuals whose actual conduct was a proximate cause of the injury. At common law, municipal officers were liable for their own torts, but the municipality, their municipal 'master,' was not vicariously liable for those torts. . . . Section 7-465 (a) effectively circumvented the general common law immunity of municipalities from vicarious liability for their employees' acts by permitting injured plaintiffs to seek indemnification from a municipal employer for such acts under certain circumstances and after conformance with certain statutory requirements, but it did not bar a plaintiff from seeking redress from those employees." (Citations omitted.) *Sanzone* v. *Board of Police Commissioners*, supra, 219 Conn. 192–93.

Although the court evaluated the claims under the wrong statute, we find that no harm resulted. Section 7-465 clearly states that governmental immunity will

not be allowed as a defense in an indemnification claim, except that the municipality will not be liable for the wilful and wanton acts of its employees. Section 7-465 is an indemnity statute; it does not create liability. Under § 7-465, the municipality's duty to indemnify attaches only when the employee is found to be liable and the employee's actions do not fall within the exception for wilful and wanton acts. That statute neither bars a plaintiff from bringing common-law claims against municipal employees nor precludes municipal employees from raising defenses to such claims as are recognized by the common law. See id., 193 (enactment of § 52-557n did not abolish common-law claims against municipal employees); see also *Spears* v. *Garcia*, supra, 263 Conn. 35–37.

Generally, the common law states that a municipal employee is liable for the misperformance of a ministerial act, but has a qualified immunity in the performance of a discretionary act. *Spears* v. *Garcia*, supra, 263 Conn. 36. This employee immunity for discretionary acts is identical to the municipality's immunity for its employees' discretionary acts under § 52-557n.

"The [common-law] doctrines that determine the tort liability of municipal employees are well established. . . . Although historically [a] municipality itself was generally immune from liability for its tortious acts at common law . . . [municipal] employees faced the same personal tort liability as private individuals. . . . Over the years, however, [t]he doctrine of [qualified] immunity has provided some exceptions to the general rule of tort liability for municipal employees. . . . Generally, a municipal employee is liable for the misperformance of ministerial acts, but has a qualified immunity in the performance of governmental acts. . . . Governmental acts are performed wholly for the direct benefit of the public and are supervisory or discretionary in nature. . . . In contrast, [m]inisterial refers to a duty

[that] is to be performed in a prescribed manner without the exercise of judgment or discretion." (Citations omitted; internal quotation marks omitted.) Id., 35–36.

In this case, we need not analyze whether the actions of the two municipal employees, Grodecki and Borges, fall within the doctrine of qualified immunity. To prevail in her lawsuit, the plaintiff must set forth a colorable common-law claim against the two municipal employees. Our common law has never recognized a right to sue an individual for intentional or negligent infliction of emotional distress resulting from injury to such property as a pet. Therefore, by pleading only claims for intentional and negligent infliction of emotional distress, the plaintiff has not set forth a colorable common-law claim against the defendant employees, and the municipality cannot be held liable for indemnification.

Labeling a pet as property fails to describe the emotional value human beings place on the companionship that they enjoy with such an animal. Although dogs are considered property; see General Statues § 22-350; this term inadequately and inaccurately describes the relationship between an individual and his or her pet. That having been said, there is no common-law authority in this state that allows plaintiffs to recover noneconomic damages resulting from a defendant's alleged negligent or intentional act resulting in the death of a pet, nor does the plaintiff refer us to any.

Furthermore, various public policy concerns discourage us from recognizing a right to such a claim. First, our Supreme Court has noted the advisability of setting limits for "establishing the permissible instances of recovery [for claims of infliction of emotional distress]. There are fears of flooding the courts with spurious and fraudulent claims; problems of proof of the damage suffered; [and] exposing the defendant to an endless number of claims . . . ." (Internal quotation marks

omitted.) *Clohessy* v. *Bachelor*, 237 Conn. 31, 50, 675 A.2d 852 (1996). Most significantly, claims for infliction of emotional distress are unavailable for the loss of a child or spouse, except when the bereaved is a bystander. Because our common law has not extended the right to sue for damages for the deprivation of such close human relationships when the plaintiff has not witnessed the fatal injury, it would be incongruous to extend it to emotional distress resulting to a person from the loss of a pet.

We therefore conclude that the plaintiff cannot lawfully recover on her claims of intentional or negligent infliction of emotional distress, and her appeal must fail because the defendant employees cannot be held liable for their actions at common law, nor can the municipality be liable for indemnification when no liability can attach to its officers or employees.

The judgment is affirmed.

In this opinion the other judges concurred.