******************************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

ROBERT P. MATUSZ *v.* WELLMORE
BEHAVIORAL HEALTH, INC.
(AC 47616)

Suarez, Clark and Keller, Js.

*Syllabus*

The plaintiff landlord appealed from the trial court's judgment, rendered after a jury trial, for the defendant tenant on the complaint alleging, inter alia, negligence in connection with a fire that caused damage to the plaintiff's rental property. The plaintiff claimed, inter alia, that the court improperly granted the defendant's motion in limine to preclude certain testimony and evidence of noneconomic damages. *Held*:

This court declined to review the plaintiff's inadequately briefed claim that the trial court improperly failed to provide the plaintiff's requested charge to the jury regarding a landlord's obligations to maintain a leased premises.

This court declined to address the plaintiff's claim that the trial court improperly granted the defendant's motion in limine, as, even if this court were to assume that the granting of the motion in limine was improper, the plaintiff could not demonstrate harm because his claim applied only to damages and the jury determined that the defendant was not liable for the fire at the plaintiff's property.

Argued February 20—officially released August 26, 2025

*Procedural History*

Action to recover damages for, inter alia, the defendant's alleged negligence, and for other relief, brought to the Superior Court in the judicial district of Waterbury, where the court, *D'Andrea, J.*, granted in part the defendant's motion for summary judgment; thereafter, the court, *D'Andrea, J.*, granted the defendant's motion in limine to preclude certain testimony and evidence; subsequently, the case was tried to the jury before *D'Andrea, J.*; verdict and judgment for the defendant, from which the plaintiff appealed to this court. *Affirmed.*

*Eddi Z. Zyko*, for the appellant (plaintiff).

*Andrew P. Barsom*, with whom, on the brief, was *Charles F. Gfeller*, for the appellee (defendant).

*Opinion*

KELLER, J. The plaintiff, Robert P. Matusz, appeals from the judgment of the trial court rendered in favor of the defendant, Wellmore Behavioral Health, Inc., on his claim that a fire caused by the defendant's negligence caused damage to his rental property. On appeal, the plaintiff claims that the court improperly (1) failed to provide his requested charge to the jury regarding a landlord's obligations to maintain a leased premises and (2) granted the defendant's motion in limine to preclude testimony and evidence of noneconomic damages. We conclude that the plaintiff's first claim is not reviewable due to inadequate briefing. As to his second claim, we determine that, even if we assume, arguendo, that the court erred in granting the defendant's motion in limine, any such error was harmless. Accordingly, we affirm the judgment of the trial court.

The jury reasonably could have found the following facts. At all relevant times, the plaintiff, a practicing podiatrist, owned a building located at 150 Meadow Street in Naugatuck (property or premises) that is located next to his professional office. Since purchasing the property in 1987, the plaintiff has leased the first floor to commercial entities. In 2012, the plaintiff and the defendant, a regional behavioral health agency, entered into a lease agreement regarding the first floor of the property. The defendant took possession of the property in October, 2012, and had a photocopier installed. The parties extended their lease agreement several times. Thereafter, the defendant leased a new photocopier from a third party, and this device was installed at the property in March, 2019. There was a dedicated wall outlet located behind the photocopier that went directly to the electrical panel. The photocopier was plugged directly into that electrical outlet, and the defendant did not use extension cords at the property.

On the morning of Saturday, June 1, 2019, three employees of the defendant arrived at the property for work. These employees noticed a smell of rubber burning. They investigated to determine the cause and location of this smell but were unable to do so. The defendant's on call supervisor directed one of the employees to contact the Naugatuck Fire Department (fire department), which she did.

After arriving at the property, members of the fire department searched for the cause of the burning rubber smell. They were unable to detect any fire or visible smoke. A thermal imaging camera was used on the walls and ceilings, but, despite the efforts of the firefighters, the source of the odor could not be determined. None of the circuit breakers in the electrical panel had been tripped. Upon completion of the assessment of the property, the firefighter in charge determined that no further action was required. In his opinion, the photocopier was the source of the smell. He directed the defendant's employees to unplug the photocopier and to contact an electrician on Monday, June 3, 2019. An employee of the defendant unplugged the photocopier as instructed.

At some point, the plaintiff arrived at the property. The plaintiff spoke with a firefighter and inquired as to what he should do. The plaintiff was told that the photocopier should remain unplugged and that the windows should be opened. He secured the property and was the last person to leave. At that time, he noted that the photocopier had been unplugged.

The following evening, a fire started at the property at 10:20 p.m. The plaintiff arrived at the scene at approximately 10:45 p.m. and observed that the property was "fully engulfed" in flames. The property sustained substantial damage. Due to the extensive damage, and other factors, including the COVID-19 pandemic, restoration

of the almost 150 year old building took more than four years. During this time period, the plaintiff incurred expenses and suffered the loss of rental income.

Edwin Dalton, the Naugatuck deputy fire marshal, was the person responsible for investigating the property to determine the cause and origin of the fire. As part of his investigation, he attended interviews with the defendant's employees and conducted an examination of the damage to the property following the fire. On the basis of his observations, Dalton determined that the fire "was heaviest in the center of the room, not in the [perimeter]." He located the cord for the photocopier and observed there was a dedicated wall outlet located behind that unit that went directly to the electrical panel. Dalton located a rare downward burn pattern in the ceiling known as a "saddle burn."[1] In the area of the saddle burn, Dalton also found a "floating splice" of electrical wires leading into a fluorescent light.[2] Dalton noted the absence of any extension cords and that "every cord [in the defendant's office] was unplugged."

Dalton subsequently learned of the June 1, 2019 call to the fire department regarding the odor of burning rubber. He investigated the photocopier as a possible source of the June 2, 2019 fire. He concluded that the photocopier was unplugged on June 2, 2019, and eliminated it as the cause, concluding that it "had nothing to do with the fire, other than being in the room of the fire."[3] The breaker for the circuit that supplied power

---

[1] Dalton explained that a "saddle burn" is characterized by its downward burn pattern, which is "not normal" and "very rare."

[2] Dalton testified that "floating splices" were common in a method of running electrical wires in a building known as "not-in-tune wiring" that is no longer used in modern construction. He also indicated that current construction standards would require the use of a junction box with a cover.

[3] Dalton further testified: "The plug [of the photocopier] was right there. There was no extension cord found anywhere. [Although one of the defendant's employees had mentioned the possibility of an extension cord, members of the fire department] found no extension cord. Every cord we found

to the photocopier had not been tripped, and the wall where its outlet was located was one of the least damaged in the room, further indicating that it was not the cause of the fire. Dalton opined that the fire was caused by "[t]he floating [wire] splice above the ceiling where that saddle burn was" and iterated that the photocopier was not the cause of the fire.

The plaintiff's insurance company, Quincy Mutual Fire Insurance Company, also conducted an investigation regarding the cause of the June 2, 2019 fire. That investigation reached the same conclusions as Dalton. Specifically, the insurance company's investigator determined that "the [photocopier] machine and the circuit that the [photocopier] was attached to . . . did not cause the fire [and that] the . . . arcing in the . . . ceiling from the spliced wires caused the fire . . . ."

On November 4, 2020, the plaintiff commenced the present action against the defendant. In his initial complaint, the plaintiff alleged claims of breach of contract, violation of the covenant of good faith and fair dealing, and negligence. On January 10, 2022, the defendant moved for summary judgment with respect to the entirety of the plaintiff's complaint.

On April 27, 2023, the court, *D'Andrea, J.*, issued a memorandum of decision granting the defendant's motion for summary judgment as to the contractual counts and denying it as to the negligence count. With respect to the plaintiff's claim for breach of contract, the court determined that "[n]one of the three [lease] provisions cited were violated by the defendant that would create an actionable claim under the lease" and

went directly to something. . . . A couple of things had a large cord [that] reached ten feet but it was coiled up behind. The copier was one of them that had a . . . four or five foot long cord, if I remember correctly. There was a coil behind there. It wouldn't reach anywhere but the outlet that it was for."

make the defendant liable for the fire.[4] As to the second count of the complaint, the court agreed with the defendant's arguments that the covenant of good faith and fair dealing is not implicated by conduct that does not impair rights set forth by contract and that such a claim failed in the absence of bad faith. As there was no genuine issue of material fact to support a conclusion that the defendant acted with a sinister motive or bad faith or that the terms of the lease had been breached, the court granted the defendant's motion as to this count of the complaint.

As to count three, alleging negligence, the court noted that the defendant argued there was no genuine issue of material fact that it had not caused the fire. In response, the plaintiff presented the affidavit of an expert, Michael V. Musco, a professional engineer, who opined that the photocopier, even unplugged, could have started the fire and that the circuit breaker should have been turned off. The plaintiff's expert further

---

[4] The plaintiff alleged, inter alia, that the defendant had violated paragraphs 8.5 and 8.6 of the lease. Article 8 of the lease sets forth various covenants of the defendant as the tenant. Paragraph 8.5 provides in relevant part: "The [defendant] covenants and agrees that the [defendant] shall not make or erect any structural improvements, structural alterations, structural replacements, structural additions or structural accessions in any manner whatsoever to the leased premises without the prior written consent of the [plaintiff]. In connection with [the defendant's] nonstructural improvements, [the defendant] shall not need [the plaintiff's] prior written consent for nonstructural alterations, decorations, installations, additions or improvements to the lease premises occurring thereafter." Paragraph 8.6 states that the defendant shall provide the plaintiff with copies of all government permits and authorizations that may be required for such work.

In granting the defendant's motion for summary judgment, the court concluded that installation of the photocopier entailed nothing more than having the device brought into the property and plugged in and therefore was not a structural improvement within the language of the lease. Thus, there was no breach of paragraph 8.5 of the parties' lease. Furthermore, as the installation of the photocopier did not require any type of permit or authorization from the government, the court determined that there was no breach of paragraph 8.6.

stated that the employees of the defendant should have contacted an electrician on June 1, 2019, to evaluate the conditions at the property. The plaintiff also pointed to evidence that one of the defendant's employees had stated that she thought the photocopier had been plugged into an extension cord. In denying the motion for summary judgment as to this count, the court noted, inter alia, that the parties' experts disagreed as to the cause of the fire and that "[n]either can provide an opinion at this point in time sufficient to eliminate any genuine issue of material fact as to the cause of the fire."

On May 1, 2023, the defendant filed its answer and special defense.[5] Thereafter, the plaintiff filed a reply denying the defendant's special defense and setting

[5] Specifically, the special defense set forth the following: "1. Subsequent to the fire, an investigation as to the cause of the fire was conducted by the [fire department].

"2. The Naugatuck fire marshal produced a report of his findings as to the most likely cause of the fire which opines that the fire was the result of electrical arcing causing pyrolysis in the ceiling of the structure caused by improper/spliced wiring and floating junctions in the electrical wiring. A true and accurate copy of the Naugatuck fire marshal's report is attached hereto as exhibit A.

"3. At the time of the fire on June 2, 2019, [the defendant's] office was closed and [none of the defendant's employees were] present at the premises nor had any [employee of the defendant] been present at the premises since the prior afternoon.

"4. On June 1, 2019, the [photocopier] as alleged in the complaint was unplugged, not energized and remained unplugged and not energized at the time of the fire.

"5. The plaintiff was the last person to leave and secured the premises on June 1, 2019, after the [fire department] responded to [the defendant's] call regarding an odor of wires burning on said date.

"6. The [photocopier] was not, at any time prior to June 1, 2019, plugged into an extension cord, power strip or any other portable wiring device. Prior to June 1, 2019, the [photocopier] had been plugged directly into and energized by a wall mounted electrical outlet.

"7. The Naugatuck fire marshal's investigation did not discover any evidence that an extension cord, power strip or any other portable wiring device was present in the premises occupied by [the defendant].

"8. Neither [the defendant] nor the [photocopier] were either the legal or proximate cause of the fire at the premises."

forth multiple matters in avoidance of the special defense.[6] That same day, he filed a claim for a jury trial and a certificate of closed pleadings. On April 5, 2024, the plaintiff filed a revised complaint sounding only in negligence. Although the fact that the parties had entered into a lease was pleaded, there is no allegation in the revised complaint that the defendant violated any specific provision of the lease, which is consistent with the court's rendering of summary judgment in favor of the defendant on the contractual counts alleged in the original complaint.

The trial was conducted over four days in April, 2024. The plaintiff requested no interrogatories, and none were submitted to the jury. Following the conclusion of the presentation of evidence, arguments of counsel, and the instructions from the court, the jury returned a verdict in favor of the defendant. The court accepted, recorded, and rendered judgment in accordance with the jury's verdict. This appeal followed. Additional facts will be set forth as necessary.

## I

The plaintiff first claims that the court improperly failed to provide his requested charge to the jury regarding a landlord's obligations to maintain a leased premises. Specifically, he argues that it was reasonably possi-

---

[6] The court charged the jury on this special defense, although it pleads facts that are inconsistent with the allegations in the plaintiff's complaint and could be construed as merely a prolonged denial. We note that "[t]he purpose of a special defense is to plead facts that are consistent with the allegations of the complaint but demonstrate, nonetheless, that the plaintiff has no cause of action. . . . [S]ee also Practice Book 10-50 ([f]acts which are consistent with [the plaintiff's] statement [of fact] but show, notwithstanding, that the plaintiff has no cause of action, must be specially alleged)." (Citation omitted; internal quotation marks omitted.) *Danbury* v. *Dana Investment Corp.*, 249 Conn. 1, 17, 730 A.2d 1128 (1999); see also *Dept. of Public Health* v. *Estrada*, 349 Conn. 223, 246–47, 315 A.3d 1081 (2024).

The plaintiff did not challenge the legal sufficiency of the defendant's special defense. See, e.g., *Doe* v. *Hartford Roman Catholic Diocesan Corp.*, 317 Conn. 357, 398, 119 A.3d 462 (2015) (motion to strike used to contest legal sufficiency of special defense); *Barasso* v. *Rear Still Hill Road, LLC*,

ble that the jury was misled by the instructions given by the court. The defendant responds that the court properly instructed the jury and, additionally, that this claim is inadequately briefed.[7] We agree that the plaintiff failed to brief his jury instruction claim adequately and, therefore, decline to review its merits.

The following additional facts and procedural history are necessary. On April 15, 2024, the plaintiff filed an "amended preliminary charge to the jury." Two days later, he filed a "second amended preliminary charge to the jury." Therein, he sought several additions to the court's proposed jury instructions. Specifically, the plaintiff requested that the court instruct the jury regarding the duty of reasonable care, and the limits of this duty, owed by a landlord to a tenant.[8] Additionally, the plaintiff requested that the court instruct the jury on the law pertaining to the lessor and lessee relationship.[9] The plaintiff's counsel requested an instruction to the jury that was "[b]asically . . . in accordance

64 Conn. App. 9, 13, 779 A.2d 198 (2001) (same). Similarly, he has not challenged the propriety of the defendant's special defense on appeal.

[7] In its appellate brief, the defendant argues that the proposed instructions that the plaintiff claims should have been given to the jury were based on the Connecticut Civil Jury Instructions that are used in actions where an invitee on leased property is injured, and, therefore, these instructions are not relevant to the facts of this case. Moreover, the defendant contends that the revised complaint does not contain any specific allegation, nor was there any evidence admitted, from which the landlord-tenant relationship applied to the plaintiff's allegations of negligence. The defendant posits that it is not clear why the model instructions were required to be given as the sole issue in this case was whether the negligence of the defendant caused the fire and the landlord-tenant relationship amounted to an ancillary matter during the trial.

[8] Specifically, the plaintiff requested the following language be included in the court's charge: "Thus, as a matter of common law, although landlords owe a duty of reasonable care as to those parts of the property over which they have retained control, landlords generally [do] not have a duty to keep in repair any portion of the premises leased to and in the exclusive possession and control of the tenant. And [the defendant] cannot delegate [its] responsibility for safety to a contractor . . . ." (Internal quotation marks omitted.)

[9] The plaintiff requested the following instruction: " 'A lease is more than a mere licence; it is a contract for the possession and profits of lands and

with Connecticut Civil Jury Instructions §§ 3.9-6 and 3.9-7."[10]

During the charging conference, the court requested that the plaintiff's counsel explain why the instructions to the jury should include information regarding the lessor and lessee relationship and landlord and tenant law. After hearing from the parties, the court took a recess to consider the plaintiff's request. After resuming

---

tenements on the one side, and a recompense of rent or other income on the other; or, in other words, a conveyance to a person for life, or years, or at will, in consideration of a return of rent or other recompense.' . . . The agreement conferred a right known technically as a profit a prendre. . . . A lease transfers an estate in real property to a tenant for a stated period, with a reversion in the owner after the expiration of the lease. Its distinguishing characteristic is the surrender of possession by the landlord to the tenant so that he may occupy the land or tenement leased to the exclusion of the landlord himself. . . .

"Ordinarily, a tenant takes the demised premises as he finds them, and the landlord is not liable for defective conditions (that is, conditions making the premises not reasonably safe for the reasonably . . . anticipated uses which the tenant would make of them) within the demised area. . . . While the general rule has often been phrased as an assumption by the tenant of the risk of defective conditions within the demised premises, the phrase 'assumption of risk' is somewhat misleading, in Connecticut at least, since it suggests that the landlord must allege and prove, in an affirmative defense, the assumption of risk by [a] tenant. This is not the law. The use of the phrase 'assumption of risk' in this connection is avoided by many, if not most, skilled text writers. . . . Assumption of risk in its true factual sense, under an affirmative defense, is illustrated in *Dean* v. *Hershowitz*, 119 Conn. 398, 411, 177 A. 262 [(1935)] . . . .

"The general rule has, however, certain exceptions or at least apparent exceptions. The burden is on . . . the tenant to allege and prove the facts necessary to take his case out of the general rule of 'caveat emptor' as to defects within the demised premises by alleging and proving that he is within one or more of the exceptions. . . . In the first place, the rule does not apply to defects, whether resulting from faulty design or from disrepair, existing at the beginning of the tenancy if they (a) were not discoverable on reasonable inspection by the tenant, and (b) were defects with a knowledge of which the landlord was chargeable. . . . It should be noted that actual knowledge, by the tenant, of a given defect is fatal to his case, even if the defect was not discoverable upon reasonable inspection." (Citations omitted.)

[10] See Connecticut Civil Jury Instructions 3.9-6 and 3.9-7, available at http://www.jud.ct.gov/JI/Civil/Civil.pdf (last visited August 14, 2025).

the charging conference, the court explained to counsel that, in its view, there was "no need to instruct the jury on any landlord-tenant issues because . . . it's peripheral to the property damages claim . . . . And [any] instruction from me I think would cloud the property damage claim and [lead] to some confusion on the jury." The plaintiff's counsel noted his exception to the court's ruling on the record.

On appeal, the plaintiff claims that the court improperly failed to include part of his request to charge regarding the obligations, and attendant limitations, of a landlord with respect to maintaining a leased premises in its jury instructions. In his appellate brief, the plaintiff sets forth the applicable standard of review and then identifies certain legal principles regarding landlord-tenant law. He then lists various facts from the case and includes a lengthy quotation from the transcript of the trial. In its appellate brief, the defendant contends, inter alia, that the plaintiff's brief lacks "additional argument or analysis, aside from the two conclusory and generic assertions [that the request to charge was 'apropos to the facts of the case' and the error in not giving the proposed charge was harmful as it likely affected the verdict. Furthermore, the plaintiff's brief does not] even remotely [address] the burden imposed on the plaintiff to challenge the rejection of a proposed jury instruction under the applicable authorities." We agree with the defendant.

"A challenge to the validity of jury instructions presents a question of law. Our review of this claim, therefore, is plenary. . . . When reviewing [a] challenged jury instruction . . . we must adhere to the well settled rule that a charge to the jury is to be considered in its entirety, read as a whole, and judged by its total effect rather than by its individual component parts. . . . [T]he test of a court's charge is not whether it is as accurate upon legal principles as the opinions of a court

of last resort but whether it fairly presents the case to the jury in such a way that injustice is not done to either party under the established rules of law. . . . As long as [the instructions] are correct in law, adapted to the issues and sufficient for the guidance of the jury . . . we will not view the instructions as improper. . . . Therefore, [o]ur standard of review on this claim is whether it is reasonably probable that the jury was misled. . . .

"It is well established that not every improper jury instruction requires a new trial because not every improper instruction is harmful. [W]e have often stated that before a party is entitled to a new trial . . . he or she has the burden of demonstrating that the error was harmful. . . . An instructional impropriety is harmful if it is likely that it affected the verdict. . . . [T]o determine whether the court's instructional impropriety was harmless, we consider not only the nature of the error, including its natural and probable effect on a party's ability to place his full case before the jury, but the likelihood of actual prejudice as reflected in the individual trial record, taking into account (1) the state of the evidence, (2) the effect of other instructions, (3) the effect of counsel's arguments, and (4) any indications by the jury itself that it was misled." (Citations omitted; internal quotation marks omitted.) *Zhuleku* v. *Naugatuck Valley Radiology Associates*, 232 Conn. App. 143, 155–56, 336 A.3d 101, cert. denied, 352 Conn. 907, 335 A.3d 846 (2025); see also *Kent Literary Club of Wesleyan University* v. *Wesleyan University*, 338 Conn. 189, 207–208, 257 A.3d 874 (2021); *Walencewicz* v. *Jealous Monk, LLC*, 228 Conn. App. 349, 379–80, 325 A.3d 271, cert. denied, 350 Conn. 927, 326 A.3d 249 (2024).

The plaintiff's appellate brief fails to contain any citation to authority or legal analysis as to why the court's instructions that did not include his requested language were improper and harmful in light of the evidence or

arguments before the jury and the effect of the court's other instructions. Additionally, the plaintiff does not discuss why the court's determination that his proposed instructions would confuse the jury was improper. As this court repeatedly has observed, "[w]e are not required to review issues that have been improperly presented to this court through an inadequate brief. . . . Analysis, rather than mere abstract assertion, is required in order to avoid abandoning an issue by failure to brief the issue properly." (Internal quotation marks omitted.) *Kosiorek* v. *Smigelski*, 138 Conn. App. 695, 717–18, 54 A.3d 564 (2012), cert. denied, 308 Conn. 901, 60 A.3d 287 (2013). Additionally, our Supreme Court has instructed that "without adequate briefing on the harmfulness of an alleged error, the [plaintiff] is not entitled to review of [the] claim on the merits." (Internal quotation marks omitted.) *MacDermid, Inc.* v. *Leonetti*, 328 Conn. 726, 748, 183 A.3d 611 (2018).

For this court to judiciously and efficiently consider a claim of error raised on appeal, the plaintiff, as the party claiming error, must clearly and fully set forth his arguments and may not merely cite a legal principle without analyzing the relationship between the facts of the case and the law cited. See *Hadji* v. *Snow*, 232 Conn. App. 829, 858, A.3d (2025), petition for cert. filed (Conn. June 23, 2025) (No. 240412). It was incumbent on the plaintiff to provide a meaningful analysis of his claim of instructional error and to include citations to relevant legal authority *and* an application of that law to the facts in the present case. See id.; see also *C. W.* v. *Warzecha*, 225 Conn. App. 137, 146–47, 314 A.3d 617 (2024) (claim deemed inadequately briefed when party *provided no applicable legal* authority or *meaningful analysis* in support of claim). Stated differently, "[i]t is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument,

and put flesh on its bones." (Internal quotation marks omitted.) *State* v. *Foster*, 217 Conn. App. 476, 529, 289 A.3d 191 (*Seeley, J.*, concurring), cert. granted, 346 Conn. 920, 291 A.3d 1041 (2023). Mindful of these principles, we conclude that this claim is inadequately briefed and, therefore, decline to review it.

## II

The plaintiff next claims that the court improperly granted the defendant's motion in limine to preclude testimony and evidence of noneconomic damages. Specifically, the plaintiff argues that the court improperly concluded that noneconomic damages were unavailable in this case. He also asserts that the court improperly prevented him from repleading his case when it denied the defendant's motion to strike the allegation in the revised complaint seeking noneconomic damages but granted its motion in limine seeking to exclude testimony and evidence regarding noneconomic damages and that, by doing so, the court improperly decided a dispositive issue of law in the context of a motion in limine. The defendant counters, inter alia, that any error regarding the granting of the motion in limine was harmless. We agree with the defendant that, under the specific facts and circumstances of this case, the plaintiff has failed to demonstrate that he suffered harm sufficient to warrant reversal, even if we were to assume that the granting of the motion in limine was improper.[11]

---

[11] In its appellate brief, the defendant argues that the plaintiff's claim challenging the court's granting of the motion in limine is really a challenge to the court's denial of the motion to strike. On the basis of that argument, the defendant claims that we lack subject matter jurisdiction over this appeal because (1) the plaintiff was not aggrieved by the denial of the motion to strike, and (2) the denial of a motion to strike is not an appealable final judgment. In his reply brief, the plaintiff reiterates that he is challenging the court's granting of the motion in limine, not the denial of the motion to strike. Although ordinarily "[a] possible absence of subject matter jurisdiction must be addressed and decided whenever the issue is raised"; (internal quotation marks omitted) *Wucik* v. *Planning & Zoning Commission*, 113 Conn. App. 502, 506, 967 A.2d 572 (2009); given the plaintiff's clarification in his reply brief that he is not challenging the court's denial of the motion

The following additional facts are necessary for the resolution of this claim. On April 1, 2024, pursuant to Practice Book § 15-3,[12] the defendant filed a motion in limine to preclude testimony and evidence of noneconomic damages.[13] Therein, the defendant asserted: "[Following the granting of summary judgment in favor of the defendant on the plaintiff's contractual claims] the sole remaining claim at issue in this action is for property damage alleged to have been caused by a fire at a commercial rental property owned by the plaintiff. . . . The plaintiff suffered no personal injuries as a result of the allegedly negligent action, the premises was not his primary residence and the testimony and evidence of damages at issue must be constrained to purely economic damages under established Connecticut law for property damage cases. Therefore, any testimony and/or evidence of noneconomic damages must be precluded as a matter of law." (Citation omitted.) The defendant subsequently contended, principally

to strike, we need not address the defendant's argument that the plaintiff is not aggrieved by the denial of its motion to strike and that the denial of the motion to strike is not a final judgment.

[12] Practice Book § 15-3 provides: "The judicial authority to whom a case has been assigned for trial may in its discretion entertain a motion in limine made by any party regarding the admission or exclusion of anticipated evidence. If a case has not yet been assigned for trial, a judicial authority may, for good cause shown, entertain the motion. Such motion shall be in writing and shall describe the anticipated evidence and the prejudice which may result therefrom. All interested parties shall be afforded an opportunity to be heard regarding the motion and the relief requested. The judicial authority may grant the relief sought in the motion or such other relief as it may deem appropriate, may deny the motion with or without prejudice to its later renewal, or may reserve decision thereon until a later time in the proceeding."

[13] "Economic damages are defined as compensation determined by the trier of fact for pecuniary losses . . . . Noneconomic damages are defined as compensation determined by the trier of fact for all nonpecuniary losses including, but not limited to, physical pain and suffering and mental and emotional suffering. . . . [E]conomic damages are akin to special damages, and noneconomic damages are akin to general damages." (Internal quotation marks omitted.) *DeVito* v. *Schwartz*, 66 Conn. App. 228, 234, 784 A.2d 376 (2001).

relying on decisions from the Superior Court, that "Connecticut law is clear that in cases where the negligent conduct results only in property damage a party may not recover noneconomic damages."

On the same day the plaintiff filed his revised complaint,[14] the defendant, pursuant to Practice Book § 10-39,[15] moved to strike the paragraph in the revised complaint that sought damages for the plaintiff's "great shock, pain, emotional stress, anguish, loss of the quality of his life, fear for his present and future well-being as well as his life itself and [continued] damages in the future." The defendant again asserted that noneconomic damages were not recoverable in this property damage case sounding only in negligence.[16] On April 9, 2024, the plaintiff filed a memorandum in opposition to the defendant's motion to strike. That same day, the

---

[14] As previously set forth in this opinion, the trial court granted in part and denied in the part the defendant's motion for summary judgment on April 27, 2023. Four days later, the defendant filed its answer to the original complaint. Following his October 4, 2023 claim for a jury trial and filing of a certificate of closed pleadings, the plaintiff revised his complaint on April 5, 2024. It does not appear that the defendant filed a revised answer. We assume that the court and the parties considered the May 1, 2023 answer applicable to the amended complaint. See Practice Book § 10-61; see also, e.g., *Cavalier* v. *Yaworski*, Docket No. CV-06-4034586-S, 2011 WL 263173, *2 (Conn. Super. January 3, 2011) (in light of party's failure to file any pleadings after filing of third revised complaint, earlier answer became applicable to operative complaint); *Waldo* v. *R.H.M. Properties, LLC*, Docket No. 557367, 2001 WL 1659274, *1 and n.1 (Conn. Super. November 30, 2001) (answer filed prior to filing of revised complaint regarded as applicable to said revised complaint to extent possible).

[15] Practice Book § 10-39 (a) provides in relevant part: "A motion to strike shall be used whenever any party wishes to contest: (1) the legal sufficiency of the allegations of any complaint, counterclaim or cross claim, or of any one or more counts thereof, to state a claim upon which relief can be granted . . . ."

[16] Specifically, the defendant argued that the revised complaint contained "no allegation of personal injury nor other aggravating factors pleaded . . . which would permit the plaintiff to assert a claim for noneconomic damages under Connecticut law. Accordingly, under well established authorities concerning the lack of availability of noneconomic damages in property damage cases, the aforementioned provisions . . . must be stricken."

court heard argument from the parties regarding this motion.

On April 16, 2024, the court issued decisions pertaining to the defendant's motion in limine and its motion to strike. It noted that numerous decisions from the Superior Court had considered this issue and referred to this court's decision in *Myers* v. *Hartford*, 84 Conn. App. 395, 853 A.2d 621, cert. denied, 271 Conn. 927, 859 A.2d 582 (2004), for guidance.[17] Specifically, the trial court cited to *Mulvey* v. *Trabka*, Docket No. CV-20-6098504-S, 2021 WL 2592369 (Conn. Super. June 3, 2021), and the analysis and reasoning contained therein that concluded that Connecticut generally has not recognized claims for negligent infliction of emotional distress in situations involving property damage alone.[18] As a result, the court determined that the allegation seeking noneconomic damages for "great shock,

---

[17] In *Myers*, a city animal control officer removed a roaming dog to a veterinary clinic and ordered it to be euthanized due to the animal's poor physical condition. See *Myers* v. *Hartford*, supra, 84 Conn. App. 396–97. The animal control officer did not seek authorization from a veterinarian as required by statute, nor did he inform the owner of the dog of the seizure. Id., 397. Several days later, the plaintiff learned that the animal had been euthanized. Id. The plaintiff commenced an action against various parties alleging, inter alia, intentional and negligent infliction of emotional distress. Id. The trial court granted the defendants' motion for a directed verdict on the basis of qualified municipal immunity pursuant to General Statutes § 52-557n (a) (2). Id.

This court affirmed the judgment of the trial court, albeit on different grounds. Id., 398. We determined that General Statutes § 7-465 (a) applied, and, in order to prevail, the plaintiff was required to set forth a colorable common-law claim against the municipal employees. Id., 402. We explained that "[o]*ur common law has never recognized a right to sue an individual for intentional or negligent infliction of emotional distress resulting from injury to such property as a pet.* Therefore, by pleading only claims for intentional and negligent infliction of emotional distress, the plaintiff has not set forth a colorable common-law claim against the defendant employees, and the municipality cannot be held liable for indemnification." (Emphasis added.) Id.

[18] The Superior Court acknowledged that cognizable claims for negligent infliction of emotional distress have been found in some situations involving claims of property damage, such as when heating oil was discharged onto

pain, emotional stress, anguish, loss of the quality of [the plaintiff's] life, fear for his present and future well-being as well as his life itself" was not recognized under our law given these facts and circumstances as alleged. For these reasons, the court granted the defendant's motion to preclude the plaintiff from introducing any evidence related to noneconomic damages. The court, however, also issued an order denying the defendant's motion to strike. The court did not provide any reasoning for its decision regarding the motion to strike, and neither party sought further explanation or moved the court to take any further action regarding this order.

The evidentiary phase of the trial concluded on April 18, 2024. The court informed counsel, outside of the presence of the jury, that pursuant to its prior ruling granting the defendant's motion in limine, the plaintiff was not entitled to, and thus the jury would not be instructed on, noneconomic damages. Counsel presented their closing arguments on April 19, 2024.

Following the court's instructions, the jury returned a verdict for the defendant later that day. On its verdict form, the jury indicated that it found in favor of the defendant. The court then rendered judgment for the defendant in accordance with the jury's verdict.

On appeal, the plaintiff argues that the court committed harmful error in granting the defendant's motion in limine to preclude evidence and testimony regarding noneconomic damages. In his reply brief, the plaintiff rephrases this argument, stating that the court erred when it "substituted a motion in limine for a motion to strike and effectively granted the motion to strike . . . ." He also asserts that the court improperly concluded that noneconomic damages were not available in the present matter.

---

property or raw sewage flowed into a home on more than one occasion, causing a continuing risk of physical exposure or a continuing fear for one's health and well-being. See *Mulvey* v. *Trabka*, supra, 2021 WL 2592369, *4.

The defendant counters, inter alia,[19] that, even if the court improperly granted its motion in limine, the plaintiff has failed to establish harm warranting reversal. We agree with the defendant that, under the facts and circumstances of this case, the plaintiff cannot demonstrate harm because his claim applies only to the issue of damages and the jury determined that the defendant was not liable for the fire at the plaintiff's property.

In order to prevail in his appeal, it is not enough for the plaintiff to demonstrate that the court's granting of the defendant's motion in limine was improper; he must also demonstrate harm. See *Coble* v. *Maloney*, 34 Conn. App. 655, 661, 643 A.2d 277 (1994); see also E. Prescott & J. Lavoie, Connecticut Appellate Practice and Procedure (8th Ed. 2023) § 8-4:3.1, p. 531. This court has explained: "Even when a trial court's evidentiary ruling is deemed to be improper, we must determine whether that ruling was so harmful as to require a new trial. . . . In other words, an evidentiary ruling will result in a new trial only if the ruling was both wrong and harmful. . . . *Harmful error occurs in a civil action when the ruling would likely affect the result. . . . It is the plaintiff's burden to show harmful error.*" (Emphasis added; internal quotation marks omitted.) *Suntech of Connecticut, Inc.* v. *Lawrence Brunoli, Inc.*, 173 Conn. App. 321, 347, 164 A.3d 36 (2017), appeal dismissed, 330 Conn. 342, 193 A.3d 1208 (2018); see also *George* v. *Ericson*, 250 Conn. 312, 327, 736 A.2d 889 (1999); *Puchalski* v. *Mathura*, 82 Conn. App. 272, 275–76, 843 A.2d 685 (2004); see generally *Mercer* v. *Champion*, 139 Conn. App. 216, 228–29, 55 A.3d 772 (2012).

The specific claim advanced by the plaintiff pertains only to the issue of damages.[20] The record reveals, however, that the jury reached its verdict in favor of the

---

[19] See footnote 11 of this opinion.

[20] "The essential elements of a cause of action in negligence are well established: duty; breach of that duty; causation; and actual injury." (Internal quotation marks omitted.) *Gibson* v. *Denmo's Original Drive-In, LLC*, 232

defendant as to liability. In its jury charge, the court explained to the jury that "a civil trial as this has two issues: liability or legal fault and damages. You will reach the issue of damages only if you find liability in favor of the plaintiff. If you find that liability is established, you will have occasion to apply my instructions concerning damages. If you find that liability has not been established, then you will not consider damages." The court then instructed the jury on the allegations of negligence set forth in the revised complaint and causation. The foreperson checked a box on the verdict form indicating that it had found in favor of the defendant.[21]

On the basis of the court's instructions and the verdict form, we conclude that the jury determined that the fire was not caused by the negligence of the defendant. Therefore, even if the plaintiff persuaded this court that the court improperly granted the motion in limine and that he should have been afforded the opportunity to present testimony and evidence of noneconomic damages, the result of this appeal would not be different because he failed to establish the liability of the defendant. "If the jury returns a defendant's verdict, errors

---

Conn. App. 733, 749, 338 A.3d 404 (2025); see also *Roux* v. *Coffey*, 230 Conn. App. 130, 139, 330 A.3d 253, cert. denied, 351 Conn. 915, 331 A.3d 1217 (2025).

[21] The verdict form also contained a notation that the jury awarded the plaintiff zero dollars in economic damages. Although the jury filled out the verdict form in derogation of the court's instructions by finding for the defendant on liability and then indicating zero damages for the plaintiff, the court accepted the verdict without asking the jury to make any correction, and the plaintiff did not raise any issue as to the verdict form in the trial court by way of a motion for directed verdict or for a new trial. Furthermore, he has not raised any issue regarding the verdict form on appeal. See *Fontana* v. *Zymol Enterprises, Inc.*, 95 Conn. App. 606, 612, 897 A.2d 694 (2006) (jury found in favor of plaintiff on claims of breach of contract and breach of subsequent oral contract, awarding $30,000 and $0 in damages, respectively; on appeal, defendant claimed jury found in its favor on second count, and this court disagreed, noting that despite award of zero damages on that count, jury form clearly indicated jury found in favor of plaintiff and trial court correctly interpreted verdict as being in favor of plaintiff).

relating to damages are harmless." E. Prescott & J. Lavoie, supra, § 8-4:3.2, p. 532.

This principle is supported in our case law. For example, in *Murphy* v. *Soracco*, 174 Conn. 165, 383 A.2d 1350 (1978), the plaintiff's vehicle, which was stopped at an intersection, was hit in the rear by the defendant's vehicle. Id., 166. The plaintiff appealed, challenging various rulings made by the trial court. Id. The jury had returned a verdict for the defendant with respect to the plaintiff's negligence action. Id. With regard to the plaintiff's claim of error pertaining to the jury charge on damages, our Supreme Court stated: "Since the jury found in favor of the defendant, absolving him from liability, unless we find error in that conclusion it is not necessary to consider the claimed errors relating to damages. Any such errors would be harmless." Id.; see also *Sears* v. *Curtis*, 147 Conn. 311, 313, 160 A.2d 742 (1960) (Supreme Court did not address appellate claim pertaining to issue of damages when verdict was for defendant); *Attardo* v. *Connecticut Railway & Lighting Co.*, 144 Conn. 741, 742, 132 A.2d 70 (1957) (same).

Similarly, in *Wright* v. *Hutt*, 50 Conn. App. 439, 718 A.2d 969, cert. denied, 247 Conn. 939, 723 A.2d 320 (1998), the plaintiffs, Jacqueline and William Wright, filed a medical malpractice action against the defendant alleging the failure to obtain informed consent and loss of consortium. Id., 441. Following a verdict in favor of the defendant, the plaintiffs appealed. Id., 440. On appeal, one of the plaintiffs' claims was that the court improperly precluded experts from testifying regarding Jacqueline's anxieties regarding her medical condition and her future medical treatment. Id., 452. This court noted that this testimony was relevant to the damages element of the plaintiffs' negligence claim. Id., 452–53. This court concluded that the plaintiffs' claim regarding this evidence was harmless error and therefore without

merit. Id., 453. The court explained that "[*t*]*he jury found for the defendant . . . on the issue of liability. Accordingly, even assuming that the trial court improperly excluded this evidence* [*regarding damages*], *the plaintiffs cannot demonstrate that the court's rulings were harmful.* . . . In the absence of a showing that the evidence would have affected the final result, its exclusion is harmless." (Citation omitted; emphasis added; internal quotation marks omitted.) Id. For the foregoing reasons, we decline to address the plaintiff's claim that the court improperly granted the defendant's motion in limine.

The judgment is affirmed.

In this opinion the other judges concurred.